**UNITED STATES of America,
Plaintiff,**

v.

**James Allen BARBER et al., Defendants.**

**Crim. A. No. 1926.**

United States District Court
D. Delaware.

Feb. 27, 1969.

See also 297 F.Supp. 917.

Alexander Greenfeld, U. S. Atty., and Norman Levine, Asst. U. S. Atty., for the United States of America.

David T. Dana, Wilmington, Del., for defendant Roland Thomas Johnson.

Richard G. Elliott, Jr., Wilmington, Del., for defendant Steven Eric White.

## OPINION

LATCHUM, District Judge.

This case grows out of an incident which occurred at approximately 3:30 P.M. on October 29, 1968 in the vicinity of Twenty-second and Pine Streets, Wilmington, Delaware. At that time Special Agents Frank W. Grant and James B. Snyder of the Federal Bureau of Investigation had arrested and taken into custody Robert L. Barber, an alleged army deserter. While taking the prisoner to their vehicle, the agents were attacked by a group of males with the result that the prisoner escaped from their custody.

On November 14, 1968 the grand jury of this district returned a seven-count indictment in which Roland Thomas Johnson, Steven Eric White (the moving defendants) and thirteen others were charged with offenses arising out of this incident. Count 1 charges Johnson, White and eleven others[1] with assault with a dangerous weapon upon Special Agent Grant in violation of 18 U.S.C. §§ 111 and 2. Count 2 charges the same defendants with an assault upon Special Agent Snyder in violation of 18 U.S.C. §§ 111 and 2. Count 3 charges the same defendants with conspiring to prevent the F.B.I. Agents from discharging their official duties in violation of 18 U.S.C. § 372. Count 4 charges the same defendants with aiding and assisting Robert L. Barber in escaping from the custody of the Special Agents in violation of 18 U.S. C. § 752(a). Count 5 charges the defendant, Nelson Hudson, with stealing Special Agent Grant's revolver in violation of 18 U.S.C. § 2112. Count 6 charges the defendant, Robert L. Barber, with escape in violation of 18 U.S.C. § 751(a) and Count 7 charges the defendant, Mary E. Whittle, with thereafter harboring the escapee in violation of 18 U.S.C. § 1381.

At arraignment, all of the defendants entered pleas of not guilty with the exception of Mary E. Whittle who plead guilty to Count 7. Subsequently the Court ordered a separate trial for Robert L. Barber who was charged only in Count 6 with escape.[2] The thirteen other de-

---

1. The eleven defendants, other than Johnson and White, charged in Counts 1 through 4 are: James Allen Barber, James Alfred Staats, Warren Hilman Mowbray, Robert Tate, Calvin Jerome Loper, Manuel Teddy Brunswick, David Nathaniel Smoke, Robert Jefferson Bolden, Jr., Nelson Hudson, William H. Robinson and Allan Steed.

2. Robert L. Barber was found guilty as charged in Count 6 by a jury after trial on February 24–25, 1969.

fendants, including Johnson and White, remain charged in Counts 1 through 4 and, in addition, defendant Hudson is further charged in Count 5 with stealing the agent's revolver.

The defendants, Johnson and White, have each filed motions (1) for a separate trial, (2) for a transfer from the district for trial and (3) for the inspection of certain documents. While the other defendants have filed many similar motions, those of Johnson and White were briefed and argued first. This opinion deals with the motions of Johnson and White.

I. *Motions For Separate Trials*

Both defendants have moved under Rule 14, F.R.Cr.P., for separate trials from each other and the other eleven defendants. They do not contend that they were misjoined under Rule 8, F.R. Cr.P., but simply say that the joinder, though otherwise proper, will result in prejudice from which the Court, in its discretion, should afford relief under Rule 14. Generally speaking, where several defendants are jointly indicted they should be tried together,[3] particularly where the charges against them arise out of joint acts allegedly committed by each in the presence of each other.[4] In such cases, joint trials are favored in the interest of conserving judicial economy, avoiding duplicitous, time-consuming and expensive trials, conserving public funds, diminishing inconvenience to witnesses and public authorities, and promptly trying those accused of crime.[5] This means that severance may be denied in the absence of a clear showing of circumstances demonstrating that a defendant "will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial altogether."[6] We turn now to the reasons for severance advanced by defendants to determine whether they outweigh the factors favoring a joint trial in this case and whether they indicate that a joint trial would be unfair to defendants.

First, the defendants contend that they will be denied their personal right to a speedy trial, guaranteed by the Sixth Amendment of the United States Constitution, unless separate trials are ordered. This argument is based on the fact that their motions for severance were filed, briefed and argued some twenty or more days before similar pretrial motions of the other defendants are scheduled to be heard and that this time differential will substantially delay their trial if they must await a joint trial with the other defendants. The right to a speedy trial is necessarily relative; it is consistent with some delays and depends upon the circumstances.[7] "The mere existence of a number of codefendants does not of itself support a claim that movant will not have a speedy trial."[8] I am convinced that there has been no unjustified and inordinate delay in the prosecution of this case against any of the defendants which would warrant a separate and immediate trial for these moving defendants. The delay attributable to the difference in the argument dates of the pre-trial motions is insub-

---

3. Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 163, 4 A.L.R.2d 1193, cert. den. 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948).

4. *See* Kilgore v. United States, 323 F.2d 369, 371 (C.A.8, 1963), cert. den. 376 U.S. 922, 84 S.Ct. 681, 11 L.Ed.2d 617 (1964).

5. Bruton v. United States, 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); United States v. Kahaner, 203 F.Supp. 78, 81 (S.D.N.Y., 1962), aff'd 317 F.2d 459 (C.A.2), cert. den. 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65 (1963).

6. United States v. Crisona, 271 F.Supp. 150, 154 (S.D.N.Y., 1967).

7. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905); see United States v. Pack, 20 F.R.D. 209 (D.Del., 1957); cf. Baker v. United States, 393 F.2d 604, 608 (C.A.9), cert. den. 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed. 2d 106 (1968).

8. United States v. Kaufman, 291 F.Supp. 451, 454 (S.D.N.Y., 1968).

stantial, insignificant, and entirely speculative. Even if separate trials were granted to them there is no assurance that they would be tried before those defendants who have not posted bail and are still incarcerated.[9]

Secondly, the moving defendants contend that they will be denied a fair trial by a joint trial because of a strong community feeling against the defendants as a group. They argue that this hostile attitude exists because of widespread newspaper and radio publicity of the incident giving rise to the present charges, because the assault occurred at a time of high racial tension in the community when the city was being patrolled by National Guard units, and because many of the defendants are allegedly former employees of a youth organization, known as WYEAC,[10] which was the subject of a highly publicized and critical United States Senate subcommittee investigation into the use of anti-poverty funds. Thus, they conclude that the probability of a verdict based on "guilt by association" is exceptionally strong in this case, for a jury will be severely tempted to transfer guilt to the moving defendants based on the illicit conduct of others.

■■ While the possibility of "guilt by association" may exist in a joint trial, this does not afford a ground for severance.[11] If the mere possibility of prejudice was all that had to be shown to warrant severance there would be few, if any, multi-defendant trials.[12] A defendant, of course, is entitled to "a fair trial but not a perfect one."[13] The United States Supreme Court has recognized that "all joint trials * * *

furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge."[14] The Court explained, however, that

> "This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest."[15]

I believe that defendants' argument of prejudice through guilt by association is overly solicitous in this instance. The assumed hostile community attitude said to prevail because of pre-trial publicity of the incident out of which this case arose would exist regardless of whether separate or joint trials are held. In any event, I am not convinced that the publicity of the incident was so massive, pervasive, inflammatory, and prejudicial as to affect either joint or separate trials. Furthermore, the racial tension existing in the community during the past year has apparently subsided to a degree and there is no reason to *speculate* that it will have any appreciable influence at the time of trial. Finally, the government states that it does not intend to introduce any evidence linking the defendants with WYEAC. Thus, I do not believe that because of pre-trial publicity or because defendants are tried jointly a jury selected after the proper use of *voir dire* will

---

9. The moving defendants are free on bail awaiting trial.

10. WYEAC stands for Wilmington Youth Emergency Action Council, a youth organization, partially supported by federal anti-poverty funds from the Office of Economic Opportunity, whose purpose was to combat street gang activities and bring alienated black youths back into the main stream of the community.

11. *See* United States v. Crisona, *supra* note 6, at 154.

12. 8 Moore Fed.Prac. § 14.04 [1] (1965).

13. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

14. Spencer v. Texas, 385 U.S. 554, 562, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

15. *Id.*

disregard the evidence presented and deprive the moving defendants of an independent determination of their guilt or innocence.[16]

█ Thirdly, the moving defendants state that a number of their co-defendants have extensive criminal records which have been publicized,[17] and that if the co-defendants testify, their conviction records can be introduced to impeach their credibility. Hence, they argue that being tried jointly with known convicted felons creates a probability that Johnson and White will be stained with the odium of their records and thus convicted upon the basis of guilt by association. But this is not a unique situation and, in fact, is often the result when a number of persons allegedly participate jointly in criminal activity. Defendants' reasons have never been and are not now considered of sufficient weight to justify ordering separate trials.[18]

Fourthly, the moving defendants claim that since the evidence against them is minimal compared to the evidence against the other defendants, they will be antagonistic to the other co-defendants. Moreover, they allege that they will be preju-diced by association with three counts of the indictment in which they are not charged. It is entirely speculative to consider the weight of the evidence against the defendants before trial. Furthermore, hostility between defendants or antagonistic defenses do not warrant a severance.[19] The counts relating to the escape and harboring an escapee have been effectively severed from the case by a guilty plea in one instance and by granting a separate trial in the other. Only count 5, charging defendant Hudson alone with theft of the special agent's revolver, remains in the case and is unrelated to the moving defendants. This charge apparently is related to the same incident out of which the assault charges arise and the jury should have no difficulty under the court's guidance in appropriately attributing guilt or innocence to the proper defendant.[20]

Finally, the moving defendants contend that their right to effective assistance of counsel will be jeopardized by a joint trial of thirteen defendants, all of whom are represented by different attorneys. They argue that the trial itself will be difficult to manage because of

16. *See* United States v. Suchman, 206 F. Supp. 688, 691 (D.Md., 1962); United States v. Hoffa, 156 F.Supp. 495, 500 (S.D.N.Y., 1957). It may be significant to note that at the separate trial of Robert L. Barber on count 6 of the indictment on February 24–25, 1969 there were 42 members of the jury panel present. On *voir dire* 10 stated that they had read or otherwise heard accounts of the incident, of which 4 said they had discussed the case, and only 2 acknowledged forming any opinions.

17. The publicized criminal records were obtained from statements and testimony given at public hearings before the Permanent Subcommittee on Investigations of the Committee on Government Operations of the United States Senate and in proceedings before the United States Commissioner at the time defendants were arrested or in later court bail reduction hearings.

18. United States v. Margeson, 261 F.Supp. 628, 629 (E.D.Pa., 1966); United States v. Stracuzza, 158 F.Supp. 522, 524 (S.D. N.Y., 1958), aff'd sub nom., United States v. Schaffer, 266 F.2d 435 (C.A. 2, 1959), aff'd, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed. 2d 921 (1960); United States v. Dioguardi, 20 F.R.D. 10, 14 (S.D.N.Y., 1956).

19. United States v. Bentvena, 193 F.Supp. 485, 492 (S.D.N.Y., 1960), rev'd on other grounds in part, aff'd on other grounds in part, 319 F.2d 916 (C.A.2), cert. den. sub nom. Mirra v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Allen v. United States, 202 F. 2d 329, 334 (C.A.D.C.), cert. den. 344 U.S. 869, 97 L.Ed. 674 (1952); Dauer v. United States, 189 F.2d 343, 344 (C.A. 10), cert. den. 342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672 (1951).

20. *See* Drew v. United States, 118 U.S. App. 11, 331 F.2d 85, 91 (C.A.D.C., 1964); Fernandez v. United States, 329 F.2d 899, 906 (C.A. 9), cert. den. 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964).

adverse jockeying between defense counsel and that this will result in an extensive, lengthy, confusing, and complicated proceeding.

I am convinced that none of the reasons advanced by the moving defendants for separate trials outweigh the governmental interest in a joint trial. The charges against all thirteen defendants arise from a single street incident in which all defendants are alleged to have participated. A substantial amount of the evidence to be offered at trial will be undoubtedly the same for each defendant. It is improbable in this case that the defendants will attempt to transfer responsibility for the assault to another. In fact, pursuant to Rule 14, the court has considered *in camera*, the oral statements of the defendants and finds that they would not be a source of prejudice to any of the co-defendants should the government attempt to introduce them in evidence. The factual determinations in this case will certainly be less demanding than in many other cases. There may be an identification problem since it is unlikely that each government witness will be able to identify all the defendants, but any confusion in this regard can be alleviated by permitting the jury to take notes of the testimony against each defendant. On the other hand, if separate trials were ordered, each witness would be called by the government or the defense in each trial. The time and inconvenience involved in separate trials could be far greater than in a joint trial.

As to the manageability of a trial of thirteen defendants represented by separate attorneys, techniques are available to the trial judge to insure a fair trial.[21] Trials have been conducted for larger numbers of defendants in more complicated criminal cases[22] and there is no reason to expect anything less than a fair trial for each of these defendants who will be tried on what now appear to be less complicated charges.

Another factor exists which militates against separate trials. An affidavit filed by the government suggests that the intimidation of witnesses in this case is a real threat. This was somewhat supported by counsel for one of the moving defendants when he stated at argument that his investigator sensed this fear when talking to prospective witnesses. A joint trial would substantially diminish the potential danger of witness intimidation since each witness would be required to testify at only one trial and the government would not be required to disclose the identity of its witnesses in advance of any subsequent trials consequently exposing those persons to intimidation.[23] Therefore Johnson's and White's motions for severance will be denied.

II. *Motion For Transfer From District For Trial*

■ Johnson and White also move to transfer the case for trial to another district under Rule 21(a), F.R.Cr.P. They argue that because they are former members of WYEAC, because WYEAC has received "extraordinary adverse publicity since early 1967", and because of the widespread pre-trial newspaper and radio publicity relating to this case a fair trial cannot be obtained in this district. At this stage in the case I am not "satisfied that there exists in * * * [this] district * * * so great a prejudice against the defendant[s] that * * *

---

21. See, *e. g.*, Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351 (1960); Manual for Complex and Multidistrict Litigation.

22. *E. g.*, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (19 defendants tried); United States v. Berman, 24 F.R.D. 26 (S.D. N.Y., 1959) (25 defendants); United States v. Gilbert, 31 F.Supp. 195, 199 (S.D. Ohio, 1939) (53 defendants); United States v. Stromberg, 268 F.2d 256, 260 (C.A.2), cert. den. 361 U.S. 863, 4 L.Ed.2d 102 (1959) (19 defendants).

23. *Cf.* United States v. Thomas Apothecary, Inc., 266 F.Supp. 890, 892 (S.D. N.Y., 1967).

[they] cannot obtain a fair and impartial trial" here.[24] It is not certain that the pre-trial publicity relating to this case or to WYEAC was so "pervasive, inflammatory, and massive" as to make selection of an impartial jury beyond hope. With regard to the newspaper publicity, defendants have submitted thirteen articles extending over a six month period from the two daily newspapers published in Wilmington. From some 300 daily papers printed during this period, the defendants offer only thirteen articles and claim an "abnormal amount of sensational" commentary. The matter of whether a "fair and impartial trial" may be held in this district should await the *voir dire* examination of prospective jurors. At that time, after examination of the jury panel, it can most appropriately be determined whether adverse publicity has affected the ability of the jurors to reach an impartial verdict.[25] Consequently, defendant's motions for transfer to another district are denied, without prejudice to the defendants' right to renew their motions at the time of trial if it appears on *voir dire* that it is impossible to secure a fair and impartial jury in this district.

### III. *Motions For Inspection*

■ Johnson and White have moved under Rule 16, F.R.Cr.P., to inspect reports of Special Agents Grant and Snyder of the F.B.I. which form the basis for the indictment against defendants and to inspect those photographs in which the moving defendants were identified by government witnesses.[26]

The statements and reports of the F.B.I. Agents, being internal government documents in connection with the investigation and prosecution of this case are exempt from production under Rule 16 and therefore defendants' motions for inspection of these statements and reports will be denied.[27] However, an inspection of the photographs in which the moving defendants were identified by prospective witnesses will be permitted under Rule 16(b) since they are material to the defense of mistaken identity, the requests appear reasonable and they do not qualify as internal government documents.[28]

An order will be entered in accordance with this opinion.

24. Rule 21(a), F.R.Cr.P.

25. Blumenfeld v. United States, 284 F.2d 46, 51 (C.A.8, 1960); *see* Estes v. United States, 335 F.2d 609, 614 (C.A.5, 1964), cert. den. 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); *cf.* United States v. Bell, 351 F.2d 868, 877 (C.A. 6, 1965), cert. den. 383 U.S. 947, 86 S. Ct. 1200, 16 L.Ed.2d 210 (1966); see note 16 *supra*.

26. Defendants' motions expressly sought "[e]ach and every one of the photographs or the photograph from which the defendant was identified," but at the oral argument counsel for the defendants specifically limited the request to only those photographs in which their clients were identified.

27. Notes of Advisory Committee on Rules, F.R.Cr.P. 16(b), 18 U.S.C.A., pp. 208–09 (Supp.1968); *cf.* U. S. A. v. Elife, 43 F. R.D. 23 (S.D.N.Y., 1967); United States v. Edwards, 42 F.R.D. 605, 606 (S.D. N.Y., 1967). At the oral argument counsel for one of the moving defendants characterized the F.B.I. reports as merely statements of witnesses, distinguished from internal government documents. Even if this be true the statements are not producible at this time since they are probably obtainable only at trial for cross-examination purposes under the Jencks Act, 18 U.S.C. § 3500. See F.R. Cr.P. 16(b).

28. *See* Simmons v. United States, 390 U.S. 377, 388, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).