**UNITED STATES of America,**
**Plaintiff,**

v.

**James Allen BARBER et al., Defendants.**
**Crim. A. No. 1926.**

United States District Court
D. Delaware.

March 14, 1969.

Alexander Greenfeld, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for the United States of America.

Joseph M. Kwiatkowski, Wilmington, Del., for defendant James Alfred Staats.

John F. Hyde, Wilmington, Del., for defendant Warren Hilman Mowbray.

Garry G. Greenstein, Wilmington, Del., for defendant Robert Tate.

Richard E. Poole, Wilmington, Del., for defendant Calvin Jerome Loper.

Harold Shaffer, Wilmington, Del., for defendant David Nathaniel Smoke.

Bernard Balick, Wilmington, Del., for defendant Robert Jefferson Bolden, Jr.

Andrew B. Kirkpatrick, Jr. and Walter L. Pepperman, II, Wilmington, Del., for defendant Nelson Hudson.

Henry A. Wise, Jr., Wilmington, Del., for defendant William H. Robinson.

## OPINION

**LATCHUM, District Judge.**

In an earlier opinion in this case several pretrial motions of defendants Roland Thomas Johnson and Steven Eric White were decided. United States v. Barber, 296 F.Supp. 795 (D.Del.1969). This opinion now considers somewhat similar and related motions filed by defendants James Alfred Staats, Warren Hilman Mowbray, Robert Tate, Calvin Jerome Loper, David Nathaniel Smoke, Robert Jefferson Bolden, Jr. and Nelson Hudson. William H. Robinson was permitted by the court at oral argument to join in the motions for severance, transfer, and discovery.

These last named defendants and seven others were indicted on November 14, 1968 by the grand jury for offenses arising out of an incident which occurred at about 3:30 P.M. on October 29, 1968 in the vicinity of Twenty-second and Pine Streets, Wilmington, Delaware. At that time Special Agents Frank W. Grant and James B. Snyder of the Federal Bureau of Investigation had arrested and taken into custody Robert L. Barber, an alleged army deserter. While escorting the prisoner to their vehicle, the agents were attacked by a group of males with the result that the prisoner escaped from their custody.

Count 1 of the indictment charges the moving defendants and five others[1] with assault with a dangerous weapon upon Special Agent Grant in violation of 18 U.S.C. §§ 111 and 2. Count 2 charges them with assault upon Special Agent Snyder in violation of 18 U.S.C. §§ 111 and 2. Count 3 charges them with conspiring to prevent the FBI agents from discharging their official duties in violation of 18 U.S.C. § 372. Count 4 charges

them with aiding and assisting Robert L. Barber to escape in violation of 18 U.S.C. § 752(a). Count 5 charges defendant Hudson with stealing Agent Grant's revolver in violation of 18 U.S.C. § 2112.[2]

## I. *Motions For Separate Trials*

■ All eight defendants have moved for separate trials pursuant to Rule 14, F.R.Cr.P. A careful examination of the motions, affidavits, exhibits, briefs and arguments of these defendants reveals that the reasons they advance for severance with three exceptions, are essentially identical to those raised by defendants Johnson and White which have been previously considered and decided. United States v. Barber, *supra.*

The three additional reasons advanced here for separate trials are: *First,* the contention is made that the testimony of co-defendants will not be available to these defendants unless they are tried separately. In this regard, counsel for defendant Hudson requests that the court follow United States v. Echeles, 352 F.2d 892 (C.A. 7, 1965). The limits of that case, however, are readily apparent: "we hold merely that, having knowledge of * * * [a co-defendant's] record testimony [in open court] protesting * * * [the moving defendant's] innocence, and considering the obvious importance of such testimony to * * * [the defendant], it was error to deny the motion for a separate trial." *Id.* at 898. If, in this case, it were definitely known, as in *Echeles,* that certain co-defendants could exculpate other defendants, severance of such defendants from such co-defendants might be warranted, regardless of whether or not they might waive their privilege against self-incrimination and give exculpatory testimony. At present, however, the *belief* that any co-defendant

---

1. The five other defendants, charged in Counts 1 through 4 with the movants, are: James Allen Barber, Roland Thomas Johnson, Steven Eric White, Manuel Teddy Brunswick and Allen Steed.

2. The indictment, as originally returned, contained two additional counts. Count 6 charged Robert L. Barber with escape in violation of 18 U.S.C. § 751(a) and Count 7 charged Mary E. Whittle with harboring the escapee in violation of 18 U.S.C. § 1381. Count 6 was severed by the Court for a separate trial which was held on February 24–25, 1969 and resulted in conviction. Count 7 was effectively severed by a guilty plea entered by Mary E. Whittle.

*might* be able to exculpate any defendant, even assuming a willingness to do so, is purely speculative and cannot form a sound basis for exercising the court's discretion in favor of severance. Furthermore, this contention appears unrealistic because there is no more reason to think the co-defendants would be any more willing to waive their constitutional rights against self-incrimination when called as witnesses at separate trials than they would be at a joint trial. Gorin v. United States, 313 F.2d 641, 645–646 (C.A. 1), cert. den. 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); *see* United States v. Van Allen, 28 F.R.D. 329, 338–339 (S.D.N.Y., 1961), aff'd in part on other grounds sub nom. United States v. Kelly, 349 F.2d 720 (C.A. 2, 1965).

■ *Second,* it is argued that at the time the defendants were arraigned and later appeared at the Federal Building for a line-up, they were accompanied by an unusual number of heavily armed, uniformed police officers who were very much in evidence in and around the courthouse. Defendants intimate that if these security measures were taken in the absence of the general public, more extreme security will be used at trial, when the curious members of the public will be out in full force. They argue that a fair trial cannot be held in an armed camp. The court does not disagree with this argument but the short answer to these fears is that the trial judge can and will take the necessary steps in conducting the proceedings to provide adequate security which will be as unobtrusive as possible under the circumstances which may then exist. This affords no basis for granting severances.

■ *Third,* dicta by the Fifth Circuit that the attorney for a testifying defendant "should be free to draw all rational inferences from the failure of a co-defendant to testify * * *" and that severance is required "[i]f an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence * * *" is cited to the court as grounds for a severance in this case. De Luna v. United States, 308 F.2d 140, 141, 143 (C.A. 5, 1962). Needless to say, the point at which this matter becomes an issue has not been reached in this case, if indeed it ever will be reached. Furthermore, this court is of the opinion that to the extent that it appears to permit counsel for any defendant to comment on the failure of any co-defendant to testify, *De Luna,* if not an aberration, *see* United States v. McKinney, 379 F.2d 259, 265 (C.A. 6, 1967); *cf.* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), is confined to a special fact situation which does not exist in this case and affords no basis for severance. United States v. Caci, 401 F.2d 664, 672 (C.A. 2, 1968); United States v. Kahn, 381 F.2d 824, 840 (C.A. 7), cert. den. 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed. 2d 661 (1967); Kolod v. United States, 371 F.2d 983, 991 (C.A. 10, 1967), vacated on other grounds 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 692 (1968); Hayes v. United States, 329 F.2d 209, 221–222 (C.A. 8), cert. den. sub nom. Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964).

For the reasons expressed here and in the earlier opinion, the motions of these defendants for separate trials will be denied. See United States v. Barber, *supra* at 800 of 296 F.Supp.

## II.  *Motions For Transfer*

■■  Six of the defendants [3] have moved, pursuant to Rule 21(a), F.R.Cr. P., to transfer this case for trial to another district. They maintain that widespread pre-trial newspaper, radio, and television publicity relating to this case, to the extensive criminal records of some of the defendants, and to the relation-

---

3. James Alfred Staats, Calvin Jerome Loper, David Nathaniel Smoke, Robert Jefferson Bolden and Nelson Hudson are the formal movants. William A. Robinson has also joined in this motion.

ship of some of them with a local youth organization, known as "WYEAC,"[4] will prevent them from obtaining a fair trial in this district. Counsel for defendant Hudson argues that prejudicial publicity regarding WYEAC has permeated the community since early in 1967. He has filed with the court 54 newspaper articles,[5] some of which are repetitious since they were published in both morning and evening papers, and 17 affidavits solicited from members of the community, most of whom are associated with civil rights and social welfare organizations. Counsel also relies heavily upon an affidavit, supporting the motions of defendants Johnson and White, of a local radio announcer (Reeves affidavit) who conducts a "two-way conversation" program broadcast throughout Delaware. The affiants state that, on the basis of their extensive contacts with members of the community, there prevails in Wilmington a general hostility towards WYEAC based on the opinion that it is an organization of criminals and affiants generally conclude that the association of some of these defendants with WYEAC has resulted in community bias against the defendants as a group and precipitated a conclusion of . guilt. The representativeness of these affidavits and the current viability of the attitudes cited in the Reeves affidavit have been questioned by the government and the court shares in this doubt. The arguments, exhibits, and affidavits have been carefully considered and no new facts have been brought to the court's attention which were not previously considered in connection with the similar motions of defendants Johnson and White.

Defendant Hudson, however, takes issue with the following language in the court's prior opinion: "It is not *certain* that the pre-trial publicity relating to this case or to WYEAC was so 'pervasive, inflammatory, and massive' as to make selection of an impartial jury beyond hope." United States v. Barber, *supra* at 801 of 296 F.Supp. (Emphasis added). Hudson argues, and the court agrees, that the applicable standard established by the Supreme Court is: the *"reasonable likelihood* that prejudicial news prior to trial will prevent a fair trial * * *."* Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966) (Emphasis added). Nevertheless, the court finds in this case on the record thus far developed no such reasonable likelihood or "even the probability of unfairness." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), quoted with approval in Estes v. Texas, 381 U.S. 532, 543, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). As a result, the court reaffirms its prior opinion relating to this matter. United States v. Barber, *supra.* The defendants' motions for transfer to another district are denied, without prejudice to their rights to renew their motions at the time of trial if it appears on *voir dire* that it is impossible to secure a fair and impartial jury in this district.

III. *Motions For Inspection*

Four of the defendants request discovery under Rule 16, F.R.Cr.P.[6] They

---

4. WYEAC stands for Wilmington Youth Emergency Action Council, a youth organization, partially supported by federal anti-poverty funds from the Office of Economic Opportunity, whose purpose was to combat street gang activities and bring alienated black youth back into the main stream of the community. WYEAC's activities were the subject of a highly publicized and critical United States Senate subcommittee investigation into the use of anti-poverty funds.

5. Notably, one of these newspaper articles indicates that on at least one occasion in recent months 4 former WYEAC members were acquitted by a jury of the Superior Court of the State of Delaware on unlawful entry charges, apparently at a joint trial.

6. Defendant Tate desires to inspect items 1 and 4; defendant Bolden desires to inspect items 1 through 5; and defendant Hudson desires to inspect all 8 items. Defendant Robinson was permitted to join in all of the discovery motions.

desire to inspect the following items alleged to be in the possession and control of the government: (1) written or recorded statements or confessions of the defendants, (2) results or reports of physical or mental examinations and of scientific tests and experiments made in connection with the case, (3) defendants' recorded testimony before the grand jury, (4) all photographs used in the identification of the defendants by government witnesses, (5) names, addresses, and signed statements of witnesses who identified defendants, (6) statements and reports of Agent Snyder, (7) statements and reports of Agent Grant, and (8) the weapons (i. e. the revolver and shoe) referred to in the indictment.

The documents referred to in item 1 have been produced for inspection by the government. The revolver has likewise been producd for inspection, but the government states that it is unable to produce the shoe since that item is not in its custody or control. The government also asserts that there is no material in existence as requested in items 2 and 3, so there can be no production or inspection in this regard.

■ An inspection of the photographs referred to in item 4 (i. e. all photographs used in the identification of the moving defendants by government witnesses) will be granted under Rule 16(b) since they are material to the defense of mistaken identity, the requests appear reasonable, and the photographs do not qualify as internal government documents. F.R.Cr.P. 16 (b); see Simmons v. United States, 390 U.S. 377, 388, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); United States v. Barber, supra at 801 of 296 F.Supp.

■ Defendants' motions for inspection of the documents enumerated in item 5 (names, addresses, and statements of potential government witnesses) will be denied since they are exempt from discovery, except as provided in 18 U.S.C. § 3500. United States v. Mar-

geson, 261 F.Supp. 628, 629 (E.D.Pa. 1966); see Notes of Advisory Committee on Rules, F.R.Cr.P. 16(b), 18 U.S. C.A., p. 209 (Supp.1968); United States v. Birrell, 276 F.Supp. 798, 826 (S.D.N.Y.1967). Defendants' motions to inspect the documents mentioned in items 6 and 7 (statements and reports of FBI Agents Snyder and Grant) will also be denied as these are likewise exempt from production under Rule 16(b), being internal government documents made in connection with the investigation and prosecution of this case. United States v. Barber, supra at 801; United States v. Elife, 43 F.R.D. 23, 24 (S.D.N.Y.1967); see United States v. Wolfson, 294 F.Supp. 267, 277 (D.Del. 1968); United States v. Turner, 274 F.Supp. 412, 417 (E.D.Tenn.1967); United States v. Westmoreland, 41 F.R.D. 419, 427 (S.D.Ind.1967). This, however, does not preclude their production at trial for purposes of cross-examination if the FBI Agents should testify. 18 U.S.C. § 3500; see United States v. Barber, supra at 801 of 196 F.Supp. n. 27.

## IV. *Motions To Dismiss And Strike*

■ Defendant Loper has moved to dismiss the indictment as to him for lack of probable cause. The answer to this contention is that the grand jury returned an indictment charging him with federal offenses in four counts and it is a universal rule that a trial court will not pass on a finding of a legally constituted, unbiased grand jury to determine whether the indictment was based on sufficient evidence when the indictment is valid on its face. Lawn v. United States, 355 U.S. 339, 349, 78 S. Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 363–364, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Whether defendant is in fact guilty or innocent must await the verdict of the trial jury. Defendant's motion will therefore be denied.

■ Defendant Smoke has moved to dismiss Count 1, which charges him and his co-defendants with assaulting a

federal officer "by means of a dangerous weapon, that is a shoe \* \* \*'" in violation of 18 U.S.C. § 111. He contends that the government will offer testimony that street shoes on a person's feet were used in the assault and that since 18 U.S.C. § 111 substantially increases the penalty for an assault with a dangerous weapon, the court should now hold, as a matter of law, that a shoe is not a dangerous weapon within the meaning of § 111.

While shoes may not be a dangerous weapon per se, almost any object "which as used or attempted to be used may endanger life or inflict great bodily harm," United States v. Anderson, 190 F.Supp. 589, 591 (D.Md.1961), or which "is \* \* \* likely to produce death or great bodily injury," Tatum v. United States, 71 U.S.App.D.C. 393, 110 F.2d 555, 556 (1940), quoting United States v. Williams, 2 F. 61, 64 (C.C.Ore.1880), can in certain circumstances be a dangerous weapon. Illustrating this principle, courts have held that "shoes on feet" can be a dangerous weapon, Medlin v. United States, 93 U.S.App.D.C. 64, 207 F.2d 33 (1953), cert. den. 347 U.S. 905, 74 S.Ct. 431, 98 L.Ed. 1064 (1954), as well as a "wine bottle," Thornton v. United States, 106 U.S.App.D.C. 7, 268 F.2d 583 (1959), a "rake," Eagleston v. United States, 172 F.2d 194, 12 Alaska 213 (C.A. 9), cert. den. 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107 (1949), a "chair," United States v. Johnson, 324 F.2d 264 (C.A. 4, 1963), a "brick," State v. Perry, 226 N.C. 530, 39 S.E.2d 460 (1946), or a "chair leg," Wisniew-ski v. State, 51 Del. 84, 138 A.2d 333, 341–342 (1957). Defendant's motion will, therefore, be denied.[7]

### V. Motions For Non-Jury Trials

Defendants Loper and White [8] have applied, pursuant to Rule 23(a), F.R.Cr.P., for trial by the court without a jury. These applications, however, cannot be granted since the government has not given its consent and this is one of the conditions precedent to a non-jury trial. Defendants have no absolute right, constitutional or otherwise, to be tried by a judge alone and Rule 23 (a) sets forth a reasonable procedure governing proffered waivers of jury trials. The Supreme Court, in Singer v. United States, 380 U.S. 24, 36, 85 S. Ct. 783, 790, 13 L.Ed.2d 630 (1965), stated:

> "A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him."

Since the government has not consented, the proffered waivers of jury trial cannot be accepted.[9]

An order will be entered in conformance with this opinion.

---

7. Defendant Smoke also moved to strike those parts of Counts 1 and 2 which charge assault "in violation of Title 18, United States Code, §§ 111 and 2." At oral argument, however, defendant withdrew this particular motion.

8. On the date the earlier opinion of this court was filed regarding the pre-trial motions of defendants Johnson and White, a letter was received from White's attorney indicating his client's desire to waive his right to a jury trial. This fact was ostensibly brought to the court's attention as bearing on the defendant's severance motion, but out of an abundance of caution the court will discuss this matter in conjunction with the Loper application, although White has not formally applied for a non-jury trial.

9. To date, the government has neither consented nor refused to consent to a non-jury trial for the moving defendants.