**UNITED STATES of America**

v.

**Rocco FRUMENTO, et al.**

**George Collitt, Movant.**

**Crim. No. 75–322.**

United States District Court,
E. D. Pennsylvania.

Oct. 3, 1975.

---

Robert E. J. Curran, U. S. Atty., Alan M. Lieberman, Joseph M. Fioravanti, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Robert E. Gabriel, Philadelphia, Pa., for Collitt.

## OPINION AND ORDER

BECHTLE, District Judge.

Before the Court are various pretrial motions filed by defendant George Collitt in this multi-defendant criminal case. Collitt is charged in two counts of an eleven-count indictment with conspiracy to violate 18 U.S.C. § 1962(c) and with violation of the Hobbs Act, 18 U.S. C. § 1951. Collitt's motions seek: (1) to quash the indictment; (2) severance and separate trial; (3) to obtain a bill of particulars; and (4) permission to inspect grand jury notes of testimony. We will discuss each motion separately.

### Motion to Quash the Indictment

Collitt contends that there are three grounds upon which the indictment should be dismissed. The first is an alleged violation of his right to a speedy trial. Secondly, he claims that this prosecution violates the Double Jeopardy Clause of the Fifth Amendment. Finally, he contends that the indictment, on its face, fails to charge a violation of federal law.

### 1. *Speedy Trial*

The events giving rise to the indictment in this case are alleged to have occurred in 1971 and 1972. The indictment itself was filed on May 22, 1975. While Collitt does not make any claim of an unconstitutional delay in the post-indictment period, he strenuously objects to the delay between the alleged criminal activity and his indictment.

■■ Prior to the time of filing of a formal indictment or information, or else the actual restraints imposed by arrest and holding to answer a criminal charge, the protections of the speedy trial provision of the Sixth Amendment do not come into play. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Likewise, the provisions of Fed.R.Crim.P. 48(b) are clearly limited to post-arrest situations. *Id.* at 319. Thus, neither the Sixth Amendment nor Rule 48 is applicable to the present case.

■ The Supreme Court did indicate in *United States v. Marion, supra,* that pre-indictment delay could violate the Due Process Clause of the Fifth Amendment. 404 U.S. at 324, 325, 92 S.Ct. 455. While some cases in this circuit have indicated that the requisite proof to make out such a violation is *either* that the pre-indictment delay caused substantial prejudice to the defendant's right to a fair trial *or* that the delay was an intentional prosecutorial device to gain tactical advantage over the accused or to harass him, *United States v. Dukow*, 453 F.2d 1328, 1330 (3d Cir.), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972); *United States v. Clark*, 398 F.Supp. 341, 350 (E.D.Pa. 1975), this Court believes that the language in *United States v. Marion, supra,* requires a showing of both elements before an indictment will be dismissed

on due process grounds. *Accord, United States v. Brown,* 511 F.2d 920, 922–923 (2d Cir. 1975); *United States v. Beckham,* 505 F.2d 1316, 1319 (5th Cir.), *cert. denied,* 421 U.S. 950, 95 S. Ct. 1683, 44 L.Ed.2d 104 (1975); *United States v. MacClain,* 501 F.2d 1006, 1010 (10th Cir. 1974); *United States v. DeTienne,* 468 F.2d 151, 156 (7th Cir. 1972), *cert. denied,* 410 U.S. 911, 93 S. Ct. 974, 35 L.Ed.2d 274 (1973).

■■ In a criminal proceeding, the constitutional guarantee of due process embodies " . . . that fundamental fairness essential to the very concept of justice." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). It is the most basic, and yet the least procedurally precise, of the constitutional limitations on the ability of the Government to prosecute an individual. This Court does not believe, in the absence of a showing of prosecutorial misconduct, that it is fundamentally unfair to a subsequently-indicted defendant that he suffers some actual prejudice to his defense from a delay in the Government's seeking of his indictment which does not exceed the applicable statute of limitations. We believe a stricter standard would place an unfair burden of responsibility on the prosecution for pre-indictment delays over which it frequently has no control. The Supreme Court recognized this fact in *United States v. Marion, supra,* 404 U.S. at 324–325, 92 S.Ct. at 465, when it stated: "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution."

■■ In the present case, Collitt has failed to prove either of the elements necessary to find a violation of due process based on pre-indictment delay. The only ground asserted by Collitt to support a claim of substantial prejudice to his right to a fair trial is the failing memories of the defense witnesses. However, a defendant may not rely on dimmed memories to support his claim of substantial prejudice. *United States v. Dukow, supra,* 453 F.2d at 1330. As for prosecutorial misconduct, while Collitt alleges that the Government's delay in bringing this indictment was "inordinate and wilful," we find no evidence of a specific intent to harass the defendant or place him at a tactical disadvantage. Mere conscious knowledge of the delay on the part of the Government is not enough to satisfy the requirement of bad faith and purposeful delay in the pre-indictment, pre-arrest period.

■ Finally, we note that the indictment pending against Collitt in the Philadelphia Court of Common Pleas, on related state charges growing out of the same activities, does not trigger the Sixth Amendment's speedy trial protection. *United States v. DeTienne, supra,* 468 F.2d at 155. Nor does a state indictment activate the provisions of Rule 48(b), which applies only to defendants who have "been held to answer *to the district court* . . . ." (Emphasis added.)

There is clearly no tenable basis upon which Collitt may claim that his right to a speedy trial has been violated. We will refuse to dismiss the indictment on that ground.

### 2. *Double Jeopardy*

Collitt next contends that the Government's indictment places him twice in jeopardy for the same offenses because there are similar charges currently pending against him under a state indictment. This claim is also without merit and will be denied.

■■ Jeopardy attaches in a jury case when the jury has been impaneled and sworn. In a non-jury case, jeopardy attaches after the court has begun to hear evidence. *United States v. Pecora,* 484 F.2d 1289 (3d Cir. 1973). Collitt has not been brought to trial yet in the state courts and, thus, has no viable argument that he is being subjected to double jeopardy by the indictment presently being challenged. Moreover, even

if jeopardy had already attached in the state case, successive state and federal prosecutions for the same acts do not violate the Double Jeopardy Clause of the Fifth Amendment. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L. Ed.2d 729 (1959).

### 3. *Federal Offense*

Collitt's final argument for dismissal of the indictment is that the statutes under which he is charged are not intended to proscribe the activity in which he allegedly engaged. The first offense allegedly committed by Collitt is conspiring, in violation of 18 U.S.C. § 1962(d), to violate 18 U.S.C. § 1962(c). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The indictment charges that, at all relevant times, Collitt was the Chief Investigator of the Bureau of Cigarette and Beverage Taxes in the Pennsylvania Department of Revenue ("Bureau"). The Bureau is an agency of the Commonwealth of Pennsylvania. The Government intends to prove at trial that all cigarettes marketed in Pennsylvania are imported from other states and that the Bureau is the sole governmental agency empowered to enforce the Commonwealth's laws respecting the importation of cigarettes. If proven, these facts would clearly establish that the activities of the Bureau affect interstate commerce. Moreover, there is no dispute that the indictment charges sufficient

acts of bribery involving Collitt and the co-defendants to establish a pattern of racketeering activity within the meaning of the statute.

The real challenge to the jurisdictional reach of 18 U.S.C. § 1962(c) posed by Collitt focuses on whether the Bureau, as a government agency, qualifies as an "enterprise." The applicable statutory definition, found at 18 U.S.C. § 1961(4), indicates that an "'enterprise' includes any . . . association, or other legal entity . . . ."

 Collitt contends that only private ventures were intended to be included within the scope of § 1962(c), and that governmental agencies are not covered by its prohibitions.[1] We think this is an unreasonably narrow interpretation of the statute. This Court believes that the Bureau is an "enterprise" within the scope of 18 U.S.C. § 1962(c). This view is supported both by the specific language of the statute and by the relevant legislative history.

Sections 1961 and 1962 were enacted as part of Title IX of the Organized Crime Control Act of 1970, Pub.L.No. 91–452, 84 Stat. 922. Title IX added Chapter 96 to Title 18 of the United States Code, which is entitled "Racketeer Influenced and Corrupt Organizations." In Section 904(a) of Pub.L.No. 91–452, Congress stated that the provisions of Title IX "shall be liberally construed to effectuate its remedial purposes." These remedial purposes were succinctly stated in a synopsis of the Senate bill that subsequently became the Organized Crime Control Act of 1970 which was included in the record of the floor debate on the bill. Specifically, under "Title IX—Corrupt Organizations," the synopsis states: "Prohibits

---

I. We can really only assume that this is Collitt's argument. In violation of Local Criminal Rule 11 of this District, which clearly states that "[a]ll motions . . . *shall* be accompanied by a brief or memorandum of law . . . ." (emphasis added), counsel has failed to provide the Court with anything more than the bare contentions contained in Collitt's motions in support of their conclusions. While we impose no sanction in the present case, this Court wishes to emphasize that non-compliance with any Local Rule is a practice to be strongly condemned and one which will be penalized if the circumstances warrant such action.

**30**

infiltration of legitimate organizations by racketeers or proceeds of racketeering activities where interstate commerce is affected." 116 Cong.Rec. 585 (1970) (remarks of Senator McClellan). We believe the repeated use of the general term "organization," not only in the statutory language but in the remarks of the bill's principal sponsor and floor leader in the Senate, Senator McClellan, belies the narrow interpretation that the Act was only intended to combat the corruption of legitimate businesses and labor unions. While such corruption of private entities was clearly a major concern of Congress, the corruption of "the processes of our democratic society," 116 Cong.Rec. 586 (1970) (remarks of Senator McClellan), was also a primary motivating force behind the enactment of this statute.

The Bureau is the arm of the Department of Revenue entrusted with fulfilling the Department's statutory duty to collect the tax imposed by law upon the sale of cigarettes in Pennsylvania. 72 P.S. § 203(n). As such, it is a "legal entity" and, thus, an "enterprise" within the meaning of 18 U.S.C. § 1961(4). We believe a congressionally-mandated broad construction of the statute properly includes illegal activity involving a governmental agency within the purview of 18 U.S.C. § 1962(c). *Cf. United States v. Parness*, 503 F.2d 430, 439 (2d Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). We will deny Collitt's motion to dismiss his indictment under 18 U.S.C. § 1962(d).

■ In Count III of the indictment, Collitt is also charged with a violation of the Hobbs Act, 18 U.S.C. § 1951, in that he obtained an extortionate payment of $500 from a cigarette wholesaler and retailer while in his position as Chief Investigator of the Bureau. The cigarettes sold by the dealer, an unindicted co-conspirator in this case, travel in and through interstate commerce, and his business clearly has an interstate character.

This Court believes the indictment sufficiently alleges the requisite effect on commerce to make Collitt's actions cognizable under the Hobbs Act. The alleged $500 payment to Collitt reduces by that amount the funds available to the cigarette dealer for use in interstate transactions. The Third Circuit has recently stated that:

> [W]here the resources of an interstate business are depleted or diminished "in any manner" by extortionate payments, the consequent impairment of ability to conduct an interstate business is sufficient to bring the extortion within the play of the Hobbs Act. *United States v. Mazzei*, 521 F.2d 639, 642 (3d Cir. 1975) (in banc), *petition for cert. filed*, 44 U.S.L.W. 3120 (U.S. Aug. 28, 1975).

■ The only remaining question concerning Collitt's indictment under the Hobbs Act is whether his alleged acts constitute "extortion," as that term is defined at 18 U.S.C. § 1951(b)(2). The Hobbs Act definition is to be read disjunctively and extortion can be established either when property is obtained through the use of fear or by one acting under color of official right. *United States v. Mazzei, supra; United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

■ The indictment alleges that Collitt accepted a $500 cash payment in his capacity as Chief Investigator of the Bureau from a cigarette dealer engaged in a conspiracy to sell cigarettes in Pennsylvania without making payment of the Pennsylvania cigarette tax. It is the duty of one in Collitt's official position to prevent just such schemes from reaching successful fruition. Collitt was "vested with decisional responsibility for the desired end," *United States v. Mazzei, supra* (dissenting opinion), and it is a reasonable inference that the alleged payment was made to him out of fear of his non-cooperation and in order to insure the continued success of the opera-

tion. The Court believes that extortion "under color of official right" has been properly charged. Collitt's motion to dismiss his indictment under 18 U.S.C. § 1951 will be denied.

### Motion for Severance and Separate Trial

■ Collitt does not allege a misjoinder of offenses or defendants under Rule 8 of the Federal Rules of Criminal Procedure. Rather, he seeks relief from what he contends is his prejudicial joinder for trial with his co-defendants under Fed.R.Crim.P. 14. The disposition of such a Rule 14 motion is within the discretion of the trial court. *United States v. Somers,* 496 F.2d 723, 730 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974).

■ The general rule is that defendants jointly indicted should be tried together. Severance may be denied in the absence of a clear showing that a defendant will be so severely prejudiced by a joint trial that it will in effect deny him a fair trial. *United States v. Barber,* 296 F.Supp. 795, 797 (D.Del. 1969), *aff'd in part, rev'd in part,* 442 F.2d 517 (3d Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971).

■ We note preliminarily that by the Court's Order of August 28, 1975, Collitt's co-defendant, Vito N. Pisciotta, was severed and granted a separate trial from the remaining defendants. The Government intends to introduce as evidence at his trial two tape recordings of conversations between defendant Pisciotta and a Government witness. Because these conversations contain repeated references to defendant Pisciotta's co-defendants, and post-conspiracy statements made by defendant Pisciotta, the Court granted a motion for severance in order to avoid the hearsay and other problems which would be raised by the use of the tape recordings in a joint trial. Apart from those recordings, the Court has not been informed by the Government of the existence of any other statements, admissions or confessions of Collitt's co-defendants which are to be introduced at trial. Merely speculative prejudice will not justify the granting of a severance under Rule 14.

■ Collitt argues that the joint trial prevents him from subpoenaing his co-defendants, who might be the only witnesses that can prove his innocence. The constitutional right of a defendant not to testify at the behest of a co-defendant remains his right despite the severance of their trials. Collitt could not compel testimony by a co-defendant, even if a severance were granted. *United States v. Barber, supra,* 442 F.2d at 529–530 n. 22. In the absence of a demonstration that one of the co-defendants would testify voluntarily for Collitt if his case were severed, we do not believe the prejudice necessary to require a separate trial has been shown. *United States v. Somers, supra,* 496 F.2d at 731.

■ Possible prejudice from the inability to comment upon a co-defendant's silence at a joint trial is also too speculative a basis upon which to grant a severance. There must be a showing that real prejudice will result from a defendant's inability to comment, such as where mutually exclusive defenses are asserted, before joinder will be deemed erroneous. *Id.* at 731.

■ Finally, while the possibility of "guilt by association" exists in a joint trial, this does not afford a ground for severance. *United States v. Barber, supra,* 296 F.Supp. at 798. As the Supreme Court has explained:

This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest. *Spencer v. Texas,* 385 U.S. 554, 562, 87 S. Ct. 648, 653, 17 L.Ed.2d 606 (1967).

For the above-stated reasons, Collitt's motion for severance and a separate trial will be denied.

### Motion for Bill of Particulars

██ A bill of particulars is intended to inform a defendant of the nature of the charges pending against. him in order that he might adequately prepare his defense, avoid surprise during the trial and protect himself against a second prosecution for an inadequately described offense. The use of a bill of particulars is only necessary when the indictment itself is too vague and indefinite to accomplish these objectives. *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

 In the instant case, Collitt seeks to obtain 22 separate items of information through a bill of particulars. The rule is still clear that a defendant is entitled neither to a wholesale discovery of the Government's evidence nor to a list of the Government's prospective witnesses. *United States v. Addonizio, supra* at 64. This Court believes that the indictment itself, along with the Government's response to this motion, provides Collitt with such clear and definite information as to make a bill of particulars unnecessary. Only two of the requests require specific mention.

██ In paragraph 21 of the Motion for Bill of Particulars, Collitt asks the Government to state whether it is "in possession of Grand Jury Minutes pertaining to witnesses [*sic*] testimony before the Special Investigating Grand Jury, June Term, 1972, together with previously recorded written statements under oath, by witnesses it intends to call." We believe this request is beyond the scope of a bill of particulars. A bill of particulars is not an all-purpose discovery tool, but rather a device with the limited function of clarifying the charges pending against an individual. Information of the type requested in paragraph 21 is more properly sought by a discovery motion filed pursuant to Fed.R.Crim.P. 16. In fact, Collitt has filed a separate Motion for Inspection of Grand Jury Notes of Testimony (see discussion *infra*).

 Collitt also asks the Government, in paragraph 20 of the motion, to state whether it "is in possession of any information, which tends to affect the credibility of any of the witnesses the Government intends to produce, at the time of trial, including records of criminal offenses committed by any of the witnesses." Again, we think this information is without the bounds of a proper bill of particulars. The Court does generally believe, however, that disclosure of a Government witness' criminal record is proper. *United States v. Leta*, 60 F.R.D. 127, 131 (M.D.Pa. 1973). Since the information is only to be used for impeachment purposes, we will not require the Government to produce the records prior to trial. However, the Court will order the Government to disclose the record of any felony conviction of each prosecution witness, insofar as the Government possesses or has access to such information, at or before the conclusion of the direct examination of the witness.

The motion for a bill of particulars will be denied.

### Motion for Inspection of Grand Jury Notes of Testimony

Collitt seeks permission for he and his counsel to examine the minutes of the federal grand jury which returned this indictment and, also, the testimony given before the June, 1972, grand jury conducted by the Philadelphia District Attorney's Office which investigated cigarette smuggling. The transcripts of the latter proceedings were released to the United States Attorney for the Eastern District of Pennsylvania by a March 19, 1975, Order of Judge Takiff of the Philadelphia Court of Common Pleas.

██ Pre-trial discovery of testimony given before a federal grand jury is

governed by Fed.R.Crim.P. 6(e). *United States v. Budzanoski,* 462 F.2d 443, 454 (3d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972). Disclosure is permitted by that Rule "when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Thus, pre-trial discovery of the testimony of a witness is permissible when it relates to the dismissal of the indictment or upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury. *United States v. Budzanoski, supra* at 454. These are instances in which the general requirement that a "particularized need" for the grand jury testimony be demonstrated by the defendant is satisfied.[2] *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

 The Court believes Collitt has failed to demonstrate any particularized need for the grand jury transcripts. His argument that he has been deprived of the opportunity to ascertain the basis of the charges against him and that he is unable to determine whether there was probable cause for his arrest, since he was not given a preliminary hearing, is a general broadside attack against grand jury secrecy and the indictment system. It is not a specific and factually based showing of a need particularly related to the defense of his case. The desire to inspect the transcripts now for possible use as an impeachment tool at trial is an unjustified attempt to obtain "an extraordinary source of discovery." *United States v. Jaskiewicz,* 272 F.Supp. 214, 216 (E.D.Pa. 1967). Pretrial inspection of the testimony of all witnesses before the grand jury, some or all of whom may never testify at trial, is not justified by any particularized need.

 Disclosure of state grand jury transcripts in a federal prosecution is controlled by the Jencks Act, 18 U.S.C. § 3500. That statute prohibits the subpoena, discovery or inspection of the statement of a prospective Government witness, which is in the possession of the United States, "until said witness has testified on direct examination in the trial of the case." Collitt's motion to inspect the state grand jury transcripts is, thus, premature.

For the above-stated reasons, Collitt's motion for inspection of the grand jury notes of testimony will be denied.

An appropriate Order will be entered.

2. Despite the Third Circuit's citation, in *Budzanoski,* of *United States v. Hughes,* 413 F.2d 1244 (5th Cir. 1969), *vacated as moot sub nom. United States v. Gifford-Hill-American, Inc.,* 397 U.S. 93, 90 S.Ct. 817, 25 L.Ed.2d 77 (1970), we believe the showing of a "particularized need" for grand jury testimony is still required before its pre-trial discovery will be permitted. *United States v. Hughes* held that grand jury transcripts are "documents" within the meaning of Fed.R.Crim.P. 16(b) and, as such, are discoverable upon a showing of materiality to the preparation of the defense, rather than the stricter "particularized need" standard. The Third Circuit specifically rejected the view that a witness' grand jury testimony falls into the general category of discoverable items controlled by Rule 16(b). *United States v. Budzanoski, supra,* 462 F.2d at 454 n. 6. This Court thus believes that there was no intent to abandon the prior judicial interpretations of Rule 6(e) which required a particularized need and that more than "mere speculation" that the grand jury transcripts might justify a dismissal of the indictment is called for before disclosure will be ordered. We note that in *United States v. Hughes, supra,* there was the specific possibility of a double jeopardy defense to the indictment, which would satisfy the "particularized need" standard.