THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACKIE ROBINSON, Defendant-Appellant.

Fourth District    No. 14063

Opinion filed September 26, 1977.

Ronald L. Carpel and Alan D. Bourey, both of Decatur, for appellant.

William J. Scott, Attorney General, of Springfield (Gerri Papushkewych, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Macon County, defendant Jackie Robinson was found guilty of rape, two counts of deviate sexual assault, armed robbery, and robbery. The judgment on the simple robbery charge was set aside. Four concurrent sentences of 30 to 50 years were imposed. Defendant appeals the convictions and sentences contending that (1) the evidence was insufficient to prove beyond a reasonable doubt his guilt to any charge, (2) he was substantially prejudiced by the admission of hearsay evidence to which no objection was made at trial, (3) the jury was improperly instructed, (4) his counsel was incompetent, and (5) his sentences were excessive.

Most of the proof of defendant's guilt is based upon the testimony of the prosecutrix. She stated that on the evening of November 4, 1975, she met three girlfriends at a Decatur nightclub and remained with them throughout the evening until about 1 a.m. the next morning. About 12:30 a.m. she noticed a male Negro sitting at her table, who appeared to be staring at her. The prosecutrix testified that after she left the nightclub,

she drove to her apartment. She noticed a light yellow car following her but when she pulled into an alley next to her apartment, the car seemed to go on to the next intersection. She then turned into the driveway, got out of her car, opened the garage doors and drove in. As she was getting out of her car, a black man appeared, pushed her against the open car door, put his hand over her mouth, put something to her throat and told her that he would kill her if she said anything. She stated that she did not see the object pressed to her throat but believed it to be a fingernail clipper or a small pocket knife. The object did not cause any bleeding, but she stated that she thought it was pressed hard enough that it could have done so.

The prosecutrix further testified that the assailant then took her to the back of the car, shut the garage doors and started taking off her clothes. He said, "You are not going to tell Chris, are you?" She stated that he then forced her to have oral sex with him involving both fellatio and cunnilingus and then had intercourse with her. The prosecutrix was unable to state the length of time between the oral sex and the intercourse but said that the sexual acts lasted for a total of about one hour and 45 minutes. She made no attempt to escape and did not blow the car horn or take other acts to summon assistance. She stated that before leaving, the assailant took a $20 bill from her purse and threatened her if she tried to contact the police. She stated that she was very scared and remained in the car until about 6:30 a.m. when the sun came up and then went into her apartment. She stated that the light was sufficient so that she could recognize the defendant and she identified him as the black man who had sat at her table that night. She testified that later at the police station, she identified defendant's picture from a group of five pictures as that of her assailant and then identified him from a lineup. At trial, she pointed to the defendant as the assailant.

The State presented evidence that at about 6:30 a.m. and 7 a.m., the prosecutrix phoned her sister and the Decatur Police Department respectively. In response to those phone calls her sister, her brother-in-law and a police officer came to the prosecutrix's apartment. The sister and the police officer testified, without objection by the defendant, that the prosecutrix had told them that she had been raped and forced to submit to deviate sexual conduct and that the Negro who sat with her and her girlfriends at the nightclub on the previous evening was her assailant. The State, also without objection, introduced the testimony of one police officer that the prosecutrix identified defendant from the separate photographs he had shown her and the testimony of another police officer that prosecutrix made an identification of her assailant at the lineup. That officer did not say who she identified. The testimony described in this paragraph is the hearsay which defendant maintains deprived him of a fair trial.

Four witnesses testified that the prosecutrix was with them at the night club on the night in question and that a black man sat with them at their table. Two were unable to identify the defendant as that black man. The other two persons did identify defendant as that man. One, named Christina, said that she knew defendant, that he came to the table and talked to her and that defendant left the night club about four or five minutes after the prosecutrix. Sergeant Hunk of the Decatur police testified that he interviewed defendant at the police station about 10:30 p.m. on November 5, 1975, the evening after the occurrence. He stated that defendant told him that he had been at the night club until about 1 a.m. that morning and then drove his white vinyl over yellow automobile to the house of his girlfriend, arriving there about 1:10 to 1:15 a.m. Hunk testified that he overheard defendant then tell someone in a telephone conversation to get over to his girlfriend's house and "hunt clothing." A black sock with a fingernail clipper inside was seized from under the front seat of defendant's car. A matching black sock and a beige and burnt-orange striped sweater were seized from the girlfriend's home. At trial, that sweater was identified by the prosecutrix as having been worn by the black person who sat at their table at the night club and the person who later assaulted her.

The defense evidence was meager. One witness testified that he saw defendant at the nightclub and that he wore a leather coat at the time. A female friend testified that defendant was at her home from 10 p.m. to about 11:30 on the evening of November 4, 1975, and then returned between 11:45 p.m. and midnight and did not leave before 12:30 a.m. The girlfriend testified that she was with defendant early in the evening and that he later returned to her house about 1:15 a.m. and did not leave at any time later that night.

■■ Defendant's contention that the evidence was not strong enough to prove the offenses of rape and deviate assault is based upon the argument that the prosecutrix did not offer enough resistance to the assailant's advances. The failure of a victim to attempt "useless or foolhardy" acts of resistance does not prevent an assailant's conduct from constituting rape. (*People v. DeFrates* (1965), 33 Ill. 2d 190, 194, 210 N.E.2d 467, 469.) The same rule would logically be applicable to the offense of deviate sexual assault. The instant acts took place late at night in a garage. Although the area was reasonably well populated, no one who could have given aid was shown to be nearby. The assailant was obviously stronger than the prosecutrix and had placed a metal object to her neck. He made several threats to kill her. Any attempt by her to resist would appear to have been "useless or foolhardy." The proof of the rape and the deviate sexual assaults fully supported the verdicts.

■■■ The contention that the proof of armed robbery was too weak

is based upon the argument that there was no showing that the assailant was armed with a dangerous weapon at the time he stole the $20. The jury, however, could have determined that the metal object held to the prosecutrix's neck was the nail clipper found in defendant's sock and that defendant held the open lever mechanism to her neck. An instrument not dangerous per se may be found to be a dangerous weapon by the manner in which it was used (*People v. Carter* (1951), 410 Ill. 462, 102 N.E.2d 312). The instrument used did cause a scratch or slight laceration on prosecutrix's neck. If that instrument was the open nail clippers and sufficient pressure had been applied, an artery or vein in her neck could have been gouged. The proof of the armed robbery was also sufficient.

The principle issue in the case concerns the admission, without objection, of the hearsay testimony of statements made by the prosecutrix accusing or identifying the defendant. The State maintains that her statements to her sister and a police officer that her assailant was the black man who earlier sat at her table, were admissible as prompt complaint by a rape victim or spontaneous declarations. Because of the opportunity that the prosecutrix had to reflect from the time that the assailant left her presence until talking to her sister and the police officer, the statements were not spontaneous. *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.

■■■ The requirements for the admissibility of a complaint by a rape victim were outlined in *Damen*. Prosecutrix's statements meet the requirements that they be initiated by the victim and that they be made without undue delay. As soon as she felt safe in leaving her car, she phoned her sister and then the police officer, summoning them to her apartment. No questioning was required to elicit the statements. *Damen* stated that, if the foregoing requirements are met, hearsay testimony may be presented that the victim made a complaint and the testimony may include such portions of the complaint as are necessary to identify the crime as the one before the court. The opinion further stated, however, that testimony as to the victim's identification of the assailant is inadmissible. The portions of the testimony of the sister and the police officer in which they stated that prosecutrix said that the black man who earlier sat at her table was her attacker was hearsay which, had objection been made, should have been excluded. For the reasons discussed later, however, we do not deem the admission of this hearsay, when no objection was made, to be reversible error.

The question of the effect of the testimony of the police officers that prosecutrix identified one of five photographs as that of her attacker and that she made an identification after viewing a lineup is more complicated. The most recent supreme court case speaking to the question is *People v. Harrison* (1962), 25 Ill. 2d 407, 185 N.E.2d 244. In

that case, the police officer testified, without objection, to an out-of-court identification by a rape victim who also testified herself to that identification but was not asked to make an in-court identification. The supreme court reversed because the evidence of identification was too weak to support the verdict. The court described the police officer's testimony as inadmissible hearsay and stated that the failure of the defense to object did not strengthen the *weight* of the evidence. It is important to note that the court did not rule that the *admission* of the hearsay, to which no objection was made, was reversible error.

More nearly in point is *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126, relied upon strongly by defendant. The sole evidence there tying the defendant to the robbery offense for which he was on trial was his identification by the victim. In addition to making an in-court identification of the defendant, the victim testified, without objection, to identifying the defendant to a police officer on the street two weeks after the offense and later at the police station. Also without objection, the police officers then testified to the victim's identifications of the defendant. The appellate court ruled that although no objection to the evidence was made, the admission of the testimony of both the victim and the police officers after the prior identifications was reversible error because it tended to give the impression that there was evidence of defendant's involvement in the crime to corroborate the testimony of the victim when, in fact, no such corroboration existed. The instant case differed from *Wright* in that the testimony that defendant made a phone call requesting that clothes be taken from his girlfriend's house, the finding there of a sweater matching the prosecutrix's description of that worn by the assailant, the finding of the nail clipper in a sock in defendant's car, the fact that his car matched the description given by the prosecutrix all corroborate the prosecutrix's testimony. The prosecutrix's accuracy of identification is corroborated by her own testimony that the assailant asked her not to tell "Chris." Christina Jackson was a mutual acquaintance of both the prosecutrix and defendant and had been at the prosecutrix's table and talked to defendant earlier on the evening of the occurrence.

■■ Defendant does not contend that error occurred because the prosecutrix herself testified to the identifications she made. One identification was after she viewed a lineup. A police officer's testimony confirmed that she had made an identification but did not say who she identified. The prejudicial effect of the officer confirming the undisputed fact that she identified somebody would seem to be very small. Another officer testified that after she selected defendant's picture from a group of four pictures and said that the picture was of the assailant is of more consequence but, here again, the defendant does not object to the

prosecutrix's testimony that she made the statement but only to the officer's confirming that fact. There is no dispute that the prosecutrix properly identified defendant at trial. As indicated in McCormick, Evidence §251, at 603 (2d ed. 1972), the lineup identification and even the identification from the photos are actually more reliable than most courtroom identifications. We do not determine substantial prejudice to have resulted from the police officer's hearsay testimony confirming those out-of-court identifications.

■■  In *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741, the supreme court stated:

"The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered."

Although Illinois has not adopted a rule that makes hearsay admissible if the declarant is present (see Model Code of Evidence, Rule 503(b)) the presence of the declarant does much to ameliorate the prejudice resulting from its improper admission. Here, the declarant of all the hearsay in question, the prosecutrix, was present, testified and was subject to cross-examination. Accordingly, we do not deem the admission without objection of the hearsay evidence of prosecutrix's report of the incident and her identifications, either individually or in toto to be reversible error.

■■  Upon tender by the State and without objection by defendant, the court gave People's Instruction 16, which stated:

"Resistance and outcry by a victim of a rape is not necessary where the victim is restrained by fear of violence or when such acts would have been futile and endangered her life."

Part of defendant's argument that the giving of the instruction was error is that the defendant did not raise the issue of consent.At the same time, he has argued that the State did not prove that the victim made sufficient resistance to her assailant. The arguments are inconsistent. Had Illinois Pattern Jury Instructions, Criminal, No. 9.02 (2d ed. 1971) been tendered rather than this instruction, it should have been given. We do not consider the given instruction to be so argumentative as to cause its giving to be plain error.

■■  Defendant argues that various failures of trial counsel deprived him of effective assistance of counsel. We have carefully examined the record and determine the charge not to be substantiated. We have indicated that we do not find substantial prejudice to have resulted because of the failure of trial counsel to object to the introduction of hearsay evidence or the giving of People's Instruction 16. Only limited advantage, at best, would have been gained by the use of police reports to impeach the prosecutrix in minor ways. The calling by the defense of his

female acquaintance who was not his girlfriend was probably a mistake as her testimony contradicted that of other defense witnesses. Defendant places great reliance upon trial counsel's failure to have him testify. He maintains that he would not have been subject to impeachment for prior felony convictions. In recent years, however, he had been convicted of misdemeanor theft. Whether to call the defendant as a witness was a delicate matter of trial strategy. Recently, in *People v. Bradley* (1976), 43 Ill. App. 3d 463, 468, 357 N.E.2d 696, 700, we reaffirmed our adherence to the rule that the test of whether incompetence of counsel has deprived a defendant of a fair trial is whether the counsel's conduct has reduced "the trial to the level of a farce." Defendant's trial counsel's conduct of his defense here was fully sufficient to meet a more demanding standard.

■■ At the sentencing hearing, a number of witnesses spoke of defendant as a good worker and amiable person and recommended a lenient sentence. The opinion of at least one of those witnesses was based upon the assumption that defendant was innocent of the offenses for which he had just been convicted. Defendant had a long record of juvenile misbehavior and adult convictions for obstructing justice and misdemeanor theft. He was about 22 years old at the time of sentencing. We do not deem the trial judge to have abused his discretion in imposing the maximum sentences. The majority of the panel does not deem the minimum sentences to be excessive. The writer deems the minimum sentences to be excessive even in consideration of the seriousness of the crimes involved and would reduce it to 20 years in each case.

The judgments of conviction and sentencing are affirmed.

Affirmed.

TRAPP, P. J., and MILLS, J., concur.