**Pete STAMPER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5713.

Supreme Court of Wyoming.

April 8, 1983.

Terry W. Mackey, Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., Sharon A. Lyman, Asst. Atty. Gen., Cheyenne, and Larry D. Sorrell, Deputy County Atty., Fremont County, for appellee.

Before ROONEY, C.J.*, and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

Pete Stamper appeals his conviction for aggravated assault with a deadly weapon under § 6–4–506(b), W.S.1977.[1] The jury acquitted appellant of involuntary manslaughter, the crime for which he was tried,

---

\* Became Chief Justice on January 1, 1983.

\*\* Chief Justice at time of oral argument.

1. Section 6–4–506(b), W.S.1977 provides:
 "(b) *With a dangerous weapon.*—Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

and found him guilty of aggravated assault with a deadly weapon as a lesser included offense of the crime charged. He now seeks reversal of his conviction and raises these issues for our consideration:

1. Did the trial court commit reversible error in admitting into evidence a pair of appellant's boots that were seized at the time of appellant's arrest?

2. Under the facts, as developed at trial, was the jury properly instructed that the crime of aggravated assault with a deadly weapon was a lesser included offense of the crime charged?

We will reverse.

## FACTS

Appellant Pete Stamper's conviction arises from an altercation he had with the deceased outside of a drinking and eating establishment in Dubois on July 10, 1981. The victim, John Smith, died approximately one and a half days after the altercation whereupon the State filed a complaint charging appellant with second degree murder.

Mr. Stamper was arrested on July 11, 1981 and a preliminary hearing was held on August 13, 1981 which resulted in the appellant being bound over on the charge of manslaughter. An information was filed charging appellant as follows:

" * * * Pete Stamper on the 10th day of July 1981, in Fremont County, Wyoming, did unlawfully, involuntarily and without malice, kill a human being and did so in the commission of an unlawful act * *." [2]

Trial commenced on April 12, 1982 and the jury returned its verdict of guilty. Further facts will be developed in conjunction with our discussion of the issues.

## ADMISSION OF THE BOOTS INTO EVIDENCE

Prior to trial, the appellant filed a motion to suppress evidence consisting of a pair of Mr. Stamper's boots that were seized at the time of his arrest. At the suppression hearing, Stamper contended that this evidence was obtained in violation of the rights guaranteed him by the Fourth and Fifth Amendments to the United States Constitution,[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and Art. 1, §§ 4 and 11 of the Wyoming Constitution.[4] It was the position of

2. Appellant was charged and tried pursuant to the provisions of § 6–4–107, W.S.1977, 1982 Cum.Supp., which reads in pertinent part:

"*Whoever unlawfully kills any human being without malice*, expressed or implied, either voluntarily, upon a sudden heat of passion, *or involuntarily, but in the commission of some unlawful act*, except as provided in W.S. 31–5–1117, or by any culpable neglect or criminal carelessness, *is guilty of manslaughter*, and shall be imprisoned in the penitentiary not more than twenty (20) years." (Emphasis added.)

3. The Fourth Amendment to the Federal Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment to the Federal Constitution provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

4. Article 1, § 4 of the Wyoming Constitution provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

Article 1, § 11 of the Wyoming Constitution provides:

"No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for

the prosecution that the boots had been seized by the officers only after appellant had freely and voluntarily consented and that under our opinion in *Parkhurst v. State,* Wyo., 628 P.2d 1369 (1981), they were therefore admissible. The trial judge held that the seizure did not violate the Fourth Amendment to the Federal Constitution and Art. 1, § 4 of the Wyoming Constitution and was therefore not subject to suppression. It was, however, further ordered that any statements elicited from appellant respecting the boots were not admissible since they were obtained in violation of appellant's rights as guaranteed under *Miranda v. Arizona,* supra.

At the trial, the State, over objection of appellant's counsel, was permitted to introduce the boots into evidence but the witness was not permitted to testify about the circumstances surrounding their acquisition. Counsel's objection went to the lack of foundation for the introduction of the evidence in light of the trial judge's previous ruling regarding statements made by appellant at the time the boots were obtained. The trial judge overruled the objection, stating:

"All right. Now, you know, the jury knows and I know and everybody knows that the chances are more than likely Mr. Stamper was not barefoot that night. And I think we also know pretty conclusively *that he was probably wearing something.* And if those boots come in and that's all that's said, *I'm going to assume that the jury's going to assume those are the boots he was wearing that night.* I don't know what other assumption they could be involved with. That's the reason for the objection to begin with; am I correct?" (Emphasis added.)

Our review of the record supports appellant's contentions that his rights, as guaranteed by *Miranda v. Arizona,* supra, were violated and the trial court properly excluded that testimony. Given this conclusion, we must also agree with appellant that the boots were improperly admitted into evidence because sufficient foundation had not been laid for their admission. We consider this error to be prejudicial, requiring reversal of appellant's conviction.

The Fourth and Fifth Amendments seizure issue raised by appellant stems from the events that occurred at the time Mr. Stamper was arrested. The testimony of the arresting officer introduced at the suppression hearing developed the following sequence of events. On July 11, 1981, the day of the victim's death, Sergeant Jack Coppock of the Fremont County Sheriff's office went to Dubois to interview witnesses to the fight that occurred between Smith and Stamper during the early hours of July 10, 1981. As these interviews were being concluded, another member of the sheriff's office and a game warden went to the appellant's residence to inquire about various threats that were presumed to have been made against appellant. Approximately 15 to 30 minutes later, Officer Coppock arrived at the Stamper residence. Appellant then informed Coppock that he had talked to his attorney who advised him to remain silent. At this point, according to Sergeant Coppock's testimony, appellant was placed under arrest but he was not advised of his *Miranda* rights.[5] Appellant then requested permission to lock some of the outbuildings on his property. The transcript from the suppression hearing then details the following sequence of events:

"A. Then Jack walked up to me about that time and said, 'Would you pick up Pete's boots?' So I immediately turned to Pete and I asked him if we could have his boots.

"Q. What exactly did you say?

"A. I said, 'Could we have your boots that was [sic] used on the night of the death of Jack Smith?' He said, 'They're

the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

5. On cross-examination Sergeant Coppock admitted, somewhat to our surprise, that it was not common practice in Fremont County, Wyoming to inform an individual of his *Miranda* rights at the time of arrest.

in the house. We will have to go in the house and get them.'

"Q. Did you do that?

"A. Yes. We followed Pete in the house there. Kay Boles and I.

"Q. Did you have a search warrant to search Mr. Stamper's house?

"A. No, sir.

"Q. Did you search Mr. Stamper's house?

"A. Pardon?

"Q. Did you search Mr. Stamper's house?

"A. We followed Pete and Pete went into a back room and looked and said he couldn't find them. Then he went into another room and we followed Pete in. He picked the shoes up and handed them to me and I brought them back out and gave them to Mr. Coppock.

"Q. Was there anything else said by either you or Mr. Stamper except what you related to us with regard to the boots being seized?

"A. No.

"Q. Did you say anything to him in the nature of, 'You have to give them to me' or "We'll get them anyway. We will get a warrant'?

"A. No."

Soon after this sequence, the appellant was transported to the local police station.

Having heard this testimony, the trial judge decided that under the totality of the circumstances the appellant had consented to the entry of his house by the officers and to the seizure of his boots. Appellant contests this finding and urges that a consent to search cannot be lawfully found to have occurred because he was under arrest at the time, had not been warned of his rights under *Miranda v. Arizona,* supra, and was never informed of his right to refuse the

search and seizure as this right is contemplated by our decision in *Parkhurst v. State,* supra. The State, on the other hand, argues that first of all no search occurred and, secondly, if a search did occur, it was conducted pursuant to appellant's consent. The main focus of the State's position is that the fact of appellant's arrest, together with the attendant lack of *Miranda* warnings, did not render appellant's consent invalid.

■■■ The basic underpinning of any search and seizure question,[6] is that warrantless searches are assumed to be unreasonable per se, *Tobin v. State,* 36 Wyo. 368, 255 P. 788 (1927); *State v. George,* 32 Wyo. 223, 231 P. 683 (1924), and the burden is on the State to justify any search conducted in the absence of a warrant by convincing this court that one of the well-delineated exceptions to the rule is applicable. One exception to the unreasonable per-se assumption is that an individual can consent to a warrantless search of an area. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, reh. denied 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976).

■■■ We dealt extensively with the consent exception to the warrant requirement in *Parkhurst v. State,* supra:

"The issue of the voluntariness of the consent may be properly resolved by a preponderance of the evidence standard. *Fitzgerald v. State,* Wyo.1979, 601 P.2d 1015. On appellate review 'we view the evidence most favorably to the party who prevailed below.' *Fitzgerald,* supra, 601 P.2d at 1018. Here the evidence was (1) the police officer asked Dennis if he could

---

**6.** We will deal in a summary manner with the State's contention that no search occurred. In making such an argument, the State relies on the assumption that the officers involved did not enter appellant's home and that they in fact acquired the boots outside of the premises. Our review of the record causes us to reject this contention. In fact, the record clearly shows that Officer Aplund accompanied appel-

lant into his house, followed him into several rooms, and received the boots within the premises. Under such circumstances, we have no doubt that an intrusion into an area protected by an expectation of privacy occurred and the entry into the area resulted from a request by a law enforcement officer. A search most definitely occurred, and it is untenable for the State to contend otherwise.

search the car; (2) Dennis replied he was not a lawyer; (3) Dennis was urged by his brother, Derrick, to go ahead and let the police officer make the search; (4) the officer indicated to Dennis that he did not have to be an attorney, he could consent to the search by himself if he wanted to; and (5) Dennis agreed to permit the search. Based on this evidence the trial court could reasonably have concluded that the defendant voluntarily consented to the search of his automobile. Therefore, we must uphold its decision and rule that the evidence obtained as a result of the search was admissible. The existence and voluntariness of a consent to search is a question of fact to be decided by the trial judge in the light of all attendant circumstances. *Mares v. State,* Wyo.1972, 500 P.2d 530, 534, fn. 1. The trial judge, under the circumstances here, was fully justified in not suppressing evidence acquired by the officers. We find no duress or coercion, as did he." 628 P.2d at 1378.

The above quotation points out that the main thrust of a consent to search is that the consent must be *voluntary,* and whether or not a consent was voluntarily given is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* supra, and *United States v. Watson,* supra. Some of the factors that can be considered are (1) the way the request to search is phrased; (2) whether the individual was told he could refuse the request; and (3) the coercive factors present.[7]

 The appellant attempts to distinguish *Parkhurst* because there the subjects had not been placed in police custody at the time the consent to search was requested. We agree with most of what appellant says. It is also clear, however, that the rules discussed in *Parkhurst* with respect to the State's burden in justifying a search are, under the case law, likewise applicable to individuals under arrest. The giving of *Mi-*

randa warnings is not a prerequisite to obtaining a consent to search; see: *State v. Oldham,* 92 Idaho 124, 438 P.2d 275 (1968); *State v. Stein,* 203 Kan. 638, 456 P.2d 1 (1969); *People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980); *People v. Phillips,* 197 Colo. 546, 594 P.2d 1053 (1979); *State v. Rodriguez,* 20 Wash.App. 876, 582 P.2d 904 (1978); *People v. James,* 19 Cal.3d 99, 137 Cal.Rptr. 447, 561 P.2d 1135 (1977); and the protections afforded by *Miranda* are only applicable to situations involving custodial interrogation, *Daniel v. State,* Wyo., 644 P.2d 172 (1982). However, the fact of custody and the failure to give the warnings required by *Miranda* are factors to be considered which indeed increase the State's burden of proving voluntariness. *State v. Laughter,* 128 Ariz. 264, 625 P.2d 327 (1980); *State v. Ulriksen,* 210 Kan. 795, 504 P.2d 232 (1972). It is well established, however, that a person in custody may give a valid consent to search and the inquiry must be whether a claimed consent is *voluntary. United States v. Lemon,* 550 F.2d 467 (9th Cir.1977). The thrust of the above holdings is that a consent to search is not testimonial and it is not evidence which can be described as being of a testimonial or communicative nature. *United States v. Lemon,* supra, 550 F.2d at 472; *People v. Ruster,* 16 Cal.3d 690, 129 Cal.Rptr. 153, 159, 548 P.2d 353, 359, 80 A.L.R.3d 1269 (1976); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

 Given the above rules, appellant asks us to hold that his boots were unlawfully obtained because under the totality of the circumstances he cannot be said to have consented. Notwithstanding the merits of his contention, we believe, under the totality of the circumstances, appellant voluntarily permitted the officers to enter his house for the purpose of acquiring his boots. We reach this conclusion only after a long and arduous struggle, given the circumstances

---

7. Coercive factors could be the number of officers present, whether guns are drawn or holstered, where and when the search takes place. *Parkhurst v. State,* supra; *State v. Rodriguez,* infra; *People v. James,* infra; *State v. Flores,* 280 Or. 273, 570 P.2d 965, 967 (1977); *People v. McKelvy,* 23 Cal.App.3d 1027, 100 Cal.Rptr. 661 (1972); see generally: Annot., 9 A.L.R.3d 858.

reflected in the record. Weighing against the State's claim of consensual search are the following facts: (1) appellant was under arrest; (2) appellant had not been informed of his *Miranda* rights; (3) the officer's question: "Could we have your boots that was [sic] used on the night of the death of Jack Smith?" was a form of interrogation; and (4) appellant was not told he could refuse. In favor of a finding of consent are: (1) no weapons had been or were drawn; (2) the atmosphere was one of cooperation, not compulsion; (3) appellant, although in custody, was not handcuffed or physically restrained; and (4) appellant freely and unequivocally agreed to get the boots. Under such circumstances, we must conclude that appellant *voluntarily* consented to the seizure of the boots. However, this conclusion does not mean that the conversation between appellant and the officers was also admissible or not subject to suppression.

At trial, the State was permitted to introduce the boots into evidence over adamant and specific objection of appellant's counsel. This objection went to the fact that the statements surrounding the seizure of the boots were inadmissible since they were obtained in violation of appellant's *Miranda* rights. The record reflects the following colloquy on the events:

"Q. Sgt. Coppock, what transpired when you arrived at the scene, or at the defendant's residence? What did you do, sir?

"A. I was introduced to Mr. Stamper and we discussed a few things, I guess.

"Q. Do you remember any of those things?

"A. Yes, sir, I do.

"Q. What was said? What did Mr. Stamper say, if anything?

"MR. MACKEY: Excuse me, your Honor, May we approach the Bench?

"THE COURT: Yes.

"(Whereupon, the following proceedings were had before the Bench and out of the hearing of the jury:)

"MR. MACKEY: Your Honor, the record is replete that Mr. Coppock made the arrest upon arrival. He said that in a motion hearing in this courtroom to the Court. He said in the preliminary hearing that he did not warn him of any of his rights to remain silent, to have a lawyer present during questioning, and he may have a lawyer appointed for him if he couldn't afford one, and so forth. All those associated warnings. Therefore, anything that Mr. Stamper said is inadmissible because he was not advised the opportunity to say nothing. But the reason this becomes so important now, your Honor, it leads into another preliminary matter. And that is that they will attempt to introduce the boots at this time, and at this point anything Mr. Stamper said he was not warned of his rights and they're not permitted to bring that in.

"MR. SORRELL: With regard to the boots, it was not testimony in nature.

"THE COURT: We're not on the boots.

"MR. MACKEY: Not yet.

"THE COURT: Let's get on what he said.

"MR. SORRELL: Okay. Well, do you want to know what it is Sgt. Coppock's going to say?

"THE COURT: No, because it doesn't matter. He arrested him.

"MR. SORRELL: At some point, yes.

"THE COURT: And did he advise him of his rights?

"MR. SORRELL: He never did advise him of his rights.

"THE COURT: Why not?

"MR. SORRELL: Well, because their feeling was if he wasn't going to question him there was no reason to advise him of his rights. And I had told him not to question him specifically. I had told him not to question him specifically and, so, they didn't advise him of his rights because they didn't intend to question him.

"And this particular statement I'm talking about is statements that Pete made more or less voluntarily before he was under arrest. They weren't necessarily responses to questions.

"THE COURT: Okay. Go back."

The jury was then removed from the courtroom and the prosecution questioned the arresting officer. After this, the colloquy between counsel and the trial court continued:

"THE COURT: Well, we're going to get to the boots next, then?

"MR. MACKEY: Yes, sir.

"THE COURT: I've already ruled on the boots. I've ruled that the boots are admissible at a prior hearing in this matter, the suppression hearing. And you do not need to make any objection, Mr. Mackey, because as I said before, I believe that you have reserved the record with reference to the boots.

"Now, this information that this witness is going to give us right now has no relevance here at all. Where would you go from here?

"MR. SORRELL: Well, your Honor, I think that the statement from the defendant that he knew why Mr. Coppock was there has some relevance.

"THE COURT: Well, sorry.

"MR. SORRELL: Okay.

"THE COURT: The objection is sustained. There's no question that when the officer went to talk to him he was the focus of the investigation. There's no question about that, is there?

"THE WITNESS: No, sir.

"THE COURT: Okay. And, you know, that pretty much just takes care of it.

"MR SORRELL: The other question, then, your Honor, leading up to the introduction of the boots, there were some conversations between Mr. Coppock and Deputy Aplund and Mr. Stamper.

"THE COURT: Well, tell me about that. I know about that from the prior proceeding, but I want it in this record right now.

"MR. SORRELL: The point I'm making, when Mr. Mackey made his objection I don't believe he addressed the effect that these conversations might have. He concentrated on the admission of the boots and whether or not the search was pursuant to consent and so forth, and he hasn't made any objection, although he had plenty of opportunity to do so with regard to the conversations that were had leading to the boots being turned over.

"THE COURT: Well, he didn't prior to the trial but he has now. Now, you don't have to make those objections prior to trial all the time. I said that any motions that you can perceive ought to be made within 10 days after the arraignment. And the motion on the boots was made.

"Now, a lot of times we used to go to trial without making any motions. We did everything right during the trial. But I think what you want to do is get the boots in.

"MR. SORRELL: That's right, your Honor.

"THE COURT: All right. That's no problem. You can just ask the witness if he got anything at the defendant's residence.

"MR. SORRELL: Without going into the conversation with regard to how they were obtained?

"THE COURT: Is that necessary?

"MR. SORRELL: Well, it's not really necessary, your Honor, if they can be entered into evidence without doing so.

"THE COURT: I don't see any problems. Do you, Mr. Mackey?

"MR. MACKEY: Well, yes I do, your Honor, but a good deal of the problem we have gone over already. I would additionally point out that we have now presented this evidence that he, Mr. Stamper, told him, 'I know why you're here. My lawyer told me not to talk to you.'

"THE COURT: Wait a minute. That's not before the jury, though.

"MR. MACKEY: That's here now. And the next thing that happened and the next thing Mr. Coppock testified to at the time of the motion hearing was, 'I then placed him under arrest.' Then he said, 'I asked Mr. Aplund to ask Mr. Stamper for the boots he used that night.'

"That was the conversation, and I take it from the Court's ruling that the conversation would be inadmissible. And that

goes back to the whole problem of the failure to advise and the failure of the foundation for the boots, and that would be the only thing in addition to the unconstitutional feature.

"THE COURT: That, you see, Mr. Mackey, you didn't bring to my attention at the time of the motion hearing; am I correct?

"MR. MACKEY: Yes. I had no idea what they were going to ask this witness to testify to.

"Now, we're here and I have to make the objections as they come up during the State's case. I recognize what the Court's saying. I need this in the record, and I see, your Honor, we not only have the Fourth Amendment problem of the unlawful search and seizure, we have the Fifth Amendment problem of using the statements made and the conversations taken at that time. And I did raise that issue at the motion hearing because I perceived it as a two-pronged problem. The Fourth Amendment, unlawful search and seizure and the Fifth Amendment, questioning without proper warnings. And both of those, your Honor, were raised in the motion, and I would submit that to the Court as well.

"THE COURT: Well, I'm going to let the boots in. And they're in.

"Now, about the statements and stuff, they're not necessary. Now, how do you want to get the boots in with the jury?

"MR. SORRELL: *Your Honor, I'll just ask the witness if he took anything into evidence at the time of the arrest and ask him to identify the boots. There's kind of a problem because I'm not sure that the boots have much meaning without the statements because there's no way to connect them up with the defendant on the evening in question.*" (Emphasis added.)

The trial judge then brought the jury back, and the arresting officer testified as follows:

"BY MR. SORRELL:

"Q. Sgt. Coppock, when you were at Mr. Stamper's resident [sic], did you gain pos-

session of any of the defendant's personal possessions?

"A. Yes, I did.

"Q. And what was that, sir?

"A. A pair of brown earth boots or logging boots.

"Q. I'm going to show you a pair of boots and ask you if you can identify these.

"Have you seen them before, sir?

"A. Yes, sir, I have.

"Q. Where have you seen that particular pair of boots before?

"A. These are the boots that I was given by Mr. Stamper.

"MR. SORRELL: Your Honor, we would ask these be entered into evidence.

"THE COURT: They're received in evidence over the defendant's objection."

As can be seen, the officer was only permitted to testify that he acquired a pair of appellant's boots at the scene of arrest, but the trial court excluded any reference to the conversation that occurred prior to their acquisition. Mr. Stamper now argues that error occurred in admitting the boots because no foundation connecting them with the incident in question was presented to the jury. We agree with the trial judge's exclusion of the statements and the appellant's assertion that the boots were then inadmissible for lack of proper foundation.

■ As we noted previously, the fact that appellant voluntarily consented to the search is not necessarily determinative of the question which asks whether his statements were admissible at a later trial. Clearly, under the circumstances of this case, they were not. As we noted in *Dryden v. State,* Wyo., 535 P.2d 483 (1975), the warnings, as required by *Miranda,* were not only designed to protect an accused's right to counsel, but also his right against self-incrimination. The latter aspect of *Miranda* has obviated the conclusion that *Miranda* only applies to statements of a communicative or testimonial nature. See: *People v. Renfrow,* 193 Colo. 131, 564 P.2d 411 (1977); *State v. Brotherton,* 2 Or.App. 157, 465 P.2d 749 (1970); *State v. McCurdy,* 100 Idaho

683, 603 P.2d 1017 (1979); *State v. Moreno,* 21 Wash.App. 430, 585 P.2d 481 (1978); *People v. Rucker,* 26 Cal.3d 368, 162 Cal.Rptr. 13, 605 P.2d 843 (1980). Specifically, it was held in *State v. Michael,* 107 Ariz. 126, 483 P.2d 541 (1971) that even though involuntary statements of an accused were inadmissible the evidence obtained as a result was admissible. We are of the opinion that the question directed to appellant by Officer Aplund amounted to interrogation in violation of appellant's rights as guaranteed by *Miranda v. Arizona,* and *Dryden v. State,* supra. We come to this conclusion because the question not only asked appellant to get a pair of boots, but it asked him to get *the pair* of boots he wore on the night of the altercation with the victim. At that point, the appellant was under arrest and had not been informed of his rights. These circumstances required the trial judge to suppress the statements under our holding in *Dryden v. State,* supra. In essence, the police were asking appellant to provide them with evidence and a statement which would have the effect of incriminating him even though he had expressed his desire to remain silent.[8] Therefore, we hold the trial judge was correct in limiting the officer's testimony, and the State does not contend otherwise.

▬▬▬▬ Given the above holding, we must accept the appellant's second contention to the effect that, in the absence of the statements, the boots were inadmissible on foundational grounds. The prosecutor himself realized this problem when he stated:

**8.** The question comes to mind with respect to whether the evidence should have been suppressed under the idea that it was obtained in violation of appellant's Fifth Amendment rights. Such a question poses the more obvious question of whether the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) applies when the police recover a piece of physical evidence as a result of a statement obtained in violation of *Miranda.* This issue is a difficult one and one which we are not called upon to decide in this case; but, as the author of this opinion noted in a concurring opinion in *Parkhurst v. State,* supra:

"In general the doctrine of the 'fruit of the poisonous tree' has been applied only in the context of Fourth Amendment violations.

" * * * There's kind of a problem because I'm not sure the boots have much meaning without the statements because there's no way to connect them up with the defendant on the evening in question."

The prosecutor's revelation was directly on point because the record reflects that, in the absence of the questioned statements, the State was unable to provide such foundation as was necessary to connect the pair of boots to the defendant and the incident in question. The only witness to testify about the boots was the officer, and a reading of his testimony, as limited in scope by the trial judge, failed to provide any evidence from which the jury could conclude that the boots were the ones worn by appellant when he fought with John Smith.[9] In the absence of some testimony connecting the boots to the incident, it was error for the trial judge to permit their admission into evidence. We realize that questions of admissibility of evidence generally reside within the sound discretion of the trial court, and such decisions will not be overturned absent a clear abuse of discretion. *Sanville v. State,* Wyo., 593 P.2d 1340 (1979); *Jackson v. State,* Wyo., 624 P.2d 751 (1981). Here, we are of the opinion that the admission of the boots was an abuse of discretion constituting prejudicial error requiring reversal. This conclusion will become more apparent as we discuss the second issue.

While I have found a few cases applying it to *Miranda* violations, I doubt the soundness of these decisions." (Footnotes omitted.) 628 P.2d at 1387.
The expression of doubt goes directly to the fact that Miranda only applies in the context of testimony or communication requiring the accused to incriminate himself, and for the purpose of this case we deem it only necessary to hold that the statements themselves were properly suppressed by the trial court. See: *United States v. Lemon,* supra, 550 F.2d at 472, nn. 5–7.

**9.** Several witnesses testified to seeing appellant kick the victim but none were asked to recall what appellant was wearing on his feet at the time.

## ERROR IN INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSE

At the close of the evidence, the trial judge instructed the jury that it could convict appellant of the lesser included offense of aggravated assault with a deadly weapon under § 6–4–506(b), W.S.1977. The instruction, which was given over objection of appellant's counsel, read:

### "INSTRUCTION NO. 8

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

"The offense of involuntary manslaughter with which the defendant is charged includes the lesser offense of aggravated assault and battery with a dangerous or deadly weapon; aggravated assault and battery; and assault and battery."

The next instruction delineated the elements of § 6–4–506(b) as follows:

### "INSTRUCTION NO. 9

"Pertinent portions of the Wyoming Statutes provide as follows:

" 'Whoever, while armed with a dangerous or deadly weapon, . . . . . maliciously perpetrates an assault or an assault and battery upon any human being. . . . .' (shall be guilty of aggravated assault or aggravated assault and battery).

"The necessary elements of the crime of aggravated assault and assault and battery with a dangerous weapon are:

"1. The crime occurred within the county of Fremont on or about the date of July 10, 1981; and

"2. The defendant perpetrated;

"3. An assault or assault and battery;

"4. Upon another human being;

"5. While armed with a dangerous or deadly weapon.

"If you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

"If, on the other hand, you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty."

The appellant contends it was error to instruct the jury on the aggravated-assault-with-a-deadly-weapon offense because there was no evidence presented by the State to support the use of a deadly weapon. The State, on the other hand, seems to argue that the elements of § 6–4–506(b) are always necessarily includable in the crime of involuntary manslaughter perpetrated during the commission of an unlawful act as set out in § 6–4–107, supra n. 2. Given the state of the record, we must agree with appellant's contentions.

We recently discussed the law with respect to the giving of lesser-included-offense instructions under Rule 8, Uniform Rules for the District Courts of the State of Wyoming, in *State v. Selig*, Wyo., 635 P.2d 786 (1981). There, we established standards for determining when a particular offense is necessarily included in the offense charged and we noted:

" * * * A trial court need not give a lesser-included offense instruction if the evidence clearly shows that the defendant is either guilty or not guilty of the offense charged, *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Richmond v. State*, Wyo., 554 P.2d 1217 (1976), reh. denied 558 P.2d 509 (1977); *Oldham v. State*, Wyo., 534 P.2d 107 (1975); *Keeble v. United States*, supra, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). However, such instruction should be given if there is evidence which would allow the jury to rationally find the defendant guilty of the lesser offense. *Oldham v. State*, supra; *Keeble v. United States*, supra.

" ' "While it has been held that in order to warrant giving an instruction there must be some 'appreciable' or 'substantial' evidence supporting it, since, as ap-

pears in § 1138 supra, the weight and sufficiency of the evidence to establish a fact in issue are a question for the jury, it is generally recognized that any evidence which will authorize the jury to find on it, although in the opinion of the court it may be weak, inconclusive, or unworthy of belief, is sufficient to justify an instruction on the issue raised by such evidence, and even positive testimony is not required, for it is sufficient if the fact in issue reasonably may be inferred from circumstances proved. However, in order to warrant giving an instruction, the evidence should be sufficient fairly to raise the question involved therein."' * * * *Goodman v. State*, Wyo., 573 P.2d 400, 409 (1977), quoting form 23A C.J.S. Criminal Law § 1313." (Emphasis omitted.) 635 P.2d at 791.

 Thus, one of the conditions which must be satisfied is that the evidence must support the giving of the instruction. A comparison of the charged offense (manslaughter in the commission of an unlawful act) and aggravated assault with a deadly weapon points to one vivid difference between the two, especially when the State's theory is that the unlawful act causing death was the commission of an aggravated assault and battery under § 6–4–506(a). The difference is the presence of a deadly weapon. Section 6–4–506(a) does not require the presence of a deadly weapon nor does § 6–4–107 necessarily require the use of a deadly weapon.[10] Thus, contrary to the position assumed by the State, the elements of § 6–4–506(b) are not always embraced by the crime delineated in § 6–4–107. In other words, to convict a defendant of the crime of manslaughter under § 6–4–

107 the State need not always prove the use of a deadly weapon. However, to be convicted of a violation of § 6–4–506(b) the State must prove the use or presence of a deadly weapon. Therefore, to warrant the giving of instructions 8 and 9, it was necessary that there be evidence that the defendant was armed with a deadly weapon.

 Our review of the record forces us to the conclusion that the instructions were erroneous. The only evidence with respect to a deadly weapon were the boots allegedly worn by appellant on the evening in question. However, as fully discussed before, these boots were never properly connected with the defendant, nor does any testimony appear of record which has to do with the use of the boots. In other words, the State failed to establish that the evidence warranted giving the lesser-included-offense instruction 9. This observation thus supports our conclusion that the admission of the boots was prejudicial, since that item was the only evidence before the jury which would have permitted them to convict appellant of aggravated assault with a deadly weapon.[11]

In the light of the conclusions reached above, we reverse appellant's conviction and remand this case for further proceedings consistent with this opinion.

ROONEY, Chief Justice, specially concurring.

I concur with the result reached by the majority opinion but do so only because the evidence does not warrant the giving of the instruction relative to the elements of § 6–4–506(b), W.S.1977 [1] (assault with a

---

10. Another difference is that to violate § 6–4–506(b) the defendant must act intentionally ("maliciously"), *Brightwell v. State*, Wyo., 631 P.2d 1048 (1981) and *Brown v. State*, Wyo., 590 P.2d 1312 (1979), while under § 6–4–107 the crime of involuntary manslaughter does not require that defendant intend to kill another human being.

11. We do not believe it is necessary to determine a corollary issue of whether or not boots are a dangerous or deadly weapon as contemplated by § 6–4–506(b). It is sufficient to note,

however, that the trial judge's instruction on that issue would appear to have been in compliance with the law.

1. Section 6–4–506(b) provides:
 "Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

dangerous weapon) as a lesser-included offense to the crime of manslaughter, and I reach this conclusion in a fashion somewhat different than that of the majority opinion.

We have upheld convictions under the statute in fact situations in which the issue relative to being armed with a dangerous weapon, as opposed to using or exhibiting a dangerous weapon, was not pertinent or presented to us. The most recent of such cases is *Brightwell v. State,* Wyo., 631 P.2d 1048 (1981). In that case, the threat of bodily injury was accompanied by display of a knife held within three or four inches of the victim. There was no question but that a deadly weapon was used with apparent ability to accomplish the assault. In *Brown v. State,* Wyo., 590 P.2d 1312 (1979), and in *Fuller v. State,* Wyo., 568 P.2d 900 (1977), the weapon was a loaded firearm which was actually discharged. In *Evanson v. State,* Wyo., 546 P.2d 412 (1976), the weapon was a firearm although not actually discharged. The weapon was displayed in each instance so that the element of being "armed with a dangerous weapon" was not contested.

The facts are different in this case. There was testimony that the defendant hit the victim with his fists, and one person said that the defendant kicked the victim. The weapons, then, were assailant's fists or feet, with the feet possibly clad in boots which, then, could be said to be a weapon. We described a deadly weapon in *Evanson v. State,* supra, at page 416, as follows:

" * * * A weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is a deadly weapon. * * * "

Before an item can be a deadly weapon, it first must be a weapon. If fists or feet, clad in shoes, boots, or otherwise, are dangerous weapons,[2] then almost everyone is continually and constantly armed with a dangerous weapon and the language "while armed with a dangerous weapon" in the statute would be superfluous. We can-

not assume the legislature to have meant this language to be superfluous. The legislature will not be presumed to intend futile things. Rather, the presumption is that it intended legislation to be reasonable and logical. *Yeik v. Department of Revenue and Taxation,* Wyo., 595 P.2d 965 (1979); *Department of Revenue and Taxation v. Irvine,* Wyo., 589 P.2d 1295 (1979). Of course, the manner in which an inanimate object (including boots or shoes) is used may convert that which is not a dangerous weapon per se into a dangerous weapon. *People v. Robinson,* 52 Ill.App.3d 658, 10 Ill.Dec. 425, 367 N.E.2d 1034 (1977); *State v. Bonier,* La., 367 So.2d 824 (1979); *State v. Luckey,* 69 Ohio Op.2d 111, 322 N.E.2d 354, 81 A.L.R.3d 995 (1974); *State v. Born,* 280 Minn. 306, 159 N.W.2d 283, 33 A.L.R.3d 919 (1968). However, that fact is of little import under the wording of our statute. Our statute requires "malice" in the perpetration of the assault or assault and battery. "Malice" in turn includes the element of "intent." *Nunez v. State,* Wyo., 383 P.2d 726 (1963). While the interval may be very small between the forming of the intent and the assault (the use of the boots in this instance), the use did occur after the intent was formed. At the time the intent was formed, the boots were not used improperly. Thus at the time of a necessary element of the assault or assault and battery, the defendant was not armed with a dangerous weapon. If the legislature had intended to make "use of a deadly weapon" rather than "armed with one" the aggravation element of the crime, it could have said so.

I find nothing in the evidence from which a jury could find defendant to have been "armed with a dangerous weapon." If the use of a dangerous weapon was the element of the offense rather than being armed with one, the use of the shoes on one's feet in kicking another could make them a dangerous weapon. *United States v. Barber,*

---

2. Fists or bare hands are not dangerous weapons, per se. *State v. Calvin,* 209 La. 257, 24 So.2d 467 (1945); *People v. Eaton,* 25 A.D.2d 692, 268 N.Y.S.2d 255 (1966); *Bean v. State,* 77 Okl.Cr. 73, 138 P.2d 563 (1943); and *People v.*

*Vollmer,* 299 N.Y. 347, 87 N.E.2d 291 (1949). Shoes, per se, are not dangerous weapons. *Smith v. State,* 79 Okl.Cr. 151, 152 P.2d 279 (1944); and *United States v. Barber,* 297 F.Supp. 917 (D.C.Del.1969).

297 F.Supp. 917 (D.C.Del.1969). The element in the statute, however, requires one to be "armed with a dangerous weapon", and wearing shoes does not make one "armed with a dangerous weapon." Thus, there was no basis for the instruction which designated such to be an element of the crime of assault with a dangerous weapon. Instructions not sustained by the evidence must not be given. *Hernandez v. Gilveli,* Wyo., 626 P.2d 74 (1981); *Beard v. Brown,* Wyo., 616 P.2d 726 (1980). The instruction was improper, and the conviction obtained pursuant to it must be set aside.

It is appropriate to note that the language of the statute does not require use, or even exhibition of, a dangerous weapon as an element of the crime. A loaded firearm may be in the pocket of the assailant, completely out of sight and without knowledge on the part of the victim that it existed, but the assailant would be "armed with a dangerous weapon." In such case, he would violate the statute if he maliciously slapped the victim. Carrying the illustration further, if shoes were a dangerous weapon and the assailant did not possess a firearm but was wearing shoes, he would violate the statute by maliciously slapping the victim. In this respect, the language of the statute is clear, plain and unambiguous. There is no reason to extend the language by looking for a legislative intent. Before a statute may be interpreted according to the spirit and intention of the legislature, it must be free and clear of ambiguity. *Kelsey v. Taft,* 72 Wyo. 210, 263 P.2d 135 (1953). In other words, if the language of the statute is plain and unambiguous and contains a clear and definite meaning, there is no occasion or reason for resorting to rules of construction for the purpose of ascertaining legislative intent, and the court has no right to look for and impose another meaning. *Board of County Commissioners of County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174, reh. denied 627 P.2d 163 (1981); *Sanches v. Sanches,* Wyo., 626 P.2d 61 (1981); *State v. Sinclair Pipeline Company,* Wyo., 605 P.2d 377 (1980). The statutory element is "armed with a dangerous weapon," not using one or dis-

playing one. There is no evidence in this case that defendant was armed with a weapon. An instruction which referred to such, in the face of no supporting evidence, was improper.

Accordingly, I concur with the majority opinion that the instruction was improper— but with different reasoning.

I believe discussion of the issue relative to proper admission of the boots into evidence is unnecessary. I do not agree with all said by the majority opinion in its discussion of this issue. For example, the constant reference to failure to give *Miranda* rights in connection with the search is misleading. It is not necessary to give the *Miranda* information when requesting permission for a warrantless search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). For another example, I believe the failure to advise defendant of his right to refuse to consent to a search is overemphasized. Such is "not to be given controlling significance." *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, reh. denied 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976).

RAPER, Justice, concurring.

I concur only in the result.

Footnote 8 discusses an academic question with which we are not concerned. It erects a strawman and then knocks it down.

This case can be decided upon the sole ground that there was no evidence connecting the boots with the crime of aggravated assault. The boots should not have been admitted into evidence for that reason.